**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| **WILLIAM JERRY** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.: 9:23-cv-00032-MJT** |
| | § | |
| **POLK COUNTY, TEXAS,** | § | *JURY DEMANDED* |
| **AND POLK COUNTY SHERIFF'S** | § | |
| **OFFICE,** | § | |
| *Defendants.* | § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants Polk County, Texas and Polk County Sheriff's Office ("Defendants") and file this their Motion for Summary Judgment, and would respectfully show unto this Honorable Court the following:

### I.
### NATURE OF THE CASE

This is an employment discrimination case.  The suit arises from Plaintiff's termination of employment by the Polk County Sheriff's Office, which was effective on March 2, 2021.  The suit alleges intentional race discrimination in employment and is brought pursuant to both 42 U.S.C. §1981 and 42 U.S.C. § 1983.  Plaintiff's Original Complaint, Dkt. # 1. (hereinafter "Complaint") ¶¶ 1, 2.

### II.
### ISSUES TO BE DECIDED

This motion raises the following issues:

1.    Whether Plaintiff can sue Polk County directly pursuant to 42 U.S.C. § 1981, or whether the suit has to be brought pursuant to 42. U.S.C. §1983;

---

2.    Whether Plaintiff can prove a prima facie case of intentional race discrimination;

3.    Whether Plaintiff can prove that Defendants' legitimate, non-discriminatory reasons for discharge are pretextual, and that the real reason Plaintiff was terminated was because of his race;

4.    If Plaintiff can prove he was discriminated against based on his race in violation of the law, whether Plaintiff can prove any violation of his federally protected rights was caused by the official policy of Polk County.

### III.
### REASONS TO GRANT SUMMARY JUDGMENT

Defendant is entitled to summary judgment for the following reasons:

1.    Defendant is entitled to summary judgment on the claim Plaintiff brings under 42 U.S.C . § 1981 because Plaintiff cannot sue Defendant directly under § 1981, but must bring this suit pursuant to 42 U.S.C. § 1983.

2.    Plaintiff cannot make a prima facie case of intentional race discrimination.

3.    Even if Plaintiff could show a prima facie case, his claim lacks merit, and it fails in the face of Defendants' legitimate, non-discriminatory reasons for discharge;

4.    Plaintiff cannot produce evidence that proves that Defendant's legitimate reasons for terminating his employment were actually a pretext and that he was actually fired because of his race.

5.    Plaintiff cannot provide any evidence that any alleged racial discrimination was caused by an official policy, custom, or practice of the County, as no such evidence exists, and the County has no such policy.

6.    The Polk County Sheriff's Office lacks a separate jural existence.

## IV.
## DEFENDANTS' SUMMARY JUDGMENT EVIDENCE

Defendant relies on the following summary judgment evidence.

Exhibit A - Declaration of Sheriff Byron Lyons (business records)

A.1 - Jerry Termination Letter signed 3.2.21

A.2 - Relevant Polk County Sheriff's Office Policies and Procedures

A.3 - Letter from Sheriff Lyons regarding intent to promote Jerry to Jail Captain dated 1.21.21

A.4 - Relevant Portions of William Jerry TCOLE Personal Information Report, Service History

A.5.A - Booking Surveillance angle #1 of 2.23.21 incident

A.5.B - Booking Surveillance angle #2 of 2.23.21 incident

A.6 - Mickey Guidry Body Camera of 2.23.21 incident

A.7 - Wyatt Cronin Body Camera of 2.23.21 incident

A.8 - Koriell Campbell Body Camera of 2.23.21 incident

A.9 - Michael Goins Body Camera of 2.23.21 incident

A.10 - Jerry Personnel Action Forms

A.11 - Jerry Garrity Warning

A.12 - Letter Regarding Receipt of Complaint and Videos 2/26/21

Exhibit B - Declaration of Sheriff Byron Lyons

Exhibit C - Declaration of Rickie Childers

Exhibit D - Declaration of Wyatt Cronin

Exhibit E - Declaration of Michael Goins

Exhibit F - Deposition Excerpts from 10/19/24 Deposition of Plaintiff William Jerry

Exhibit G  - Transcript of Mickey Guidry Body Camera Footage from 2/23/21

## V.
## STATEMENT OF UNCONTESTED FACTS

Defendants believes the following facts are uncontested:

A.    Background

Plaintiff William Jerry is a 48 year-old African-American man, who was a jail lieutenant in the Polk County Jail at the time of his termination on March 2, 2021. Ex. A.1, Termination Letter. Plaintiff has a lengthy career in law enforcement that started at the Kountze Police Department in September of 2000. Ex. A.4, TCOLE Personal Information Report at 1. After working primarily as a jailer at the Galveston County Sheriff's Office, the Orange County Sheriff's Office and the Newton County Sheriff's Office, Jerry joined the Polk County Sheriff's Office on October 15, 2024 to work as a patrol deputy. *See id.* In October of 2012, Jerry left the Polk County Sheriff's Office to join the Alabama-Coushatta Tribe of Texas Police Department as a Captain. *Id.*; Ex. F Jerry Deposition Transcript at 31 lns. 4 - 10; p. 32 lns. 6 - 30. Jerry left that position in July of 2013 due to an inappropriate "flirtatious" relationship he had with a female employee of the police department. *Id.*; Ex. F Jerry Deposition Transcript at p. 33 lns. 16 - 25.  Jerry rejoined the Polk County Sheriff's Office in July of 2013 as a patrol deputy. *Id.*; Ex. F Jerry Deposition Transcript at p. 37, lns. 8 - 10. In the summer of 2017, Jerry took a position in the jail as a Transportation supervisor. *Id.*; Ex. F Jerry Deposition Transcript at p. 26 lns. 13 - 22.

Jerry was later promoted to Jail Lieutenant. Ex. A.10 Personnel Action Form at 1. At the beginning of 2021, then Jail Captain Patrick Dickens submitted his resignation

effective to be effective March 12, 2021.  Ex. A.3 Promotion Letter at 1. On January 21, 2021, Sheriff Byron Lyons sent a letter to Director Of Human Resources Adrena Gilbert stating that he had offered Jerry the soon to be vacant position of Jail Captain ,and that Jerry had accepted the offer. *Id.*; Ex. B Lyons Declaration at ¶ 5. Jerry was set to take on the new jail captain position upon Dickens resignation on March 12, 2021. *Id.*; Ex. B Lyons Declaration at ¶ 5.

Sheriff Byron Lyons started at the Polk County Sheriff's Office in 1986 as a jailer, and then returned to the Polk County Sheriff's Office to serve as Chief Deputy under newly-elected Sheriff Kenneth Hammack in 2005. Ex. B Lyons Declaration at ¶ 3. Sheriff Lyons has known and worked with William Jerry for over sixteen years. *Id.* at ¶ 5.Sheriff Lyons and Jerry always had a good working relationship and were friends outside of work. *Id.* Sheriff Lyons is also an African American. *Id.* at ¶ 3. Lyons served as Chief Deputy from 2005 until 2021 when he was elected Sheriff of Polk County. *Id.* at ¶ 5. Lyons has worked in law enforcement for approximately 38 years. *Id.* at ¶ 10.  In his entire law enforcement career, including his time as duly-elected Sheriff of Polk County, Sheriff Lyons has never been accused of racial discrimination against African-Americans, Whites, or another racial group. *Id.* In fact, Lyons has never been accused of discrimination of any kind, racial, or otherwise. *Id.* at ¶ 3. Jerry stated in his deposition that prior to the incident that makes the basis of this suit, Sheriff Lyons never engaged in any type of racially discriminate behavior towards him in the over sixteen years that they have known and worked with each other. Ex. F, Jerry Deposition Excerpts at 164.

B.    Plaintiff's Use of Excessive Force

On the morning of February 23, 2021, Lieutenant William Jerry was working in the

Polk County Jail. *See* Ex. F, Deposition Excerpts at p. 104, lns. 20-24. At approximately 8:30 in the morning, an inmate in cell tank 231, Michael Richards, allegedly gave Jerry the middle finger through the window of the cell tank. *See id.* at p. 105, lns. 5-16. Jerry claims that in response to the middle finger, Jerry began instructing Richards with hand signals to pack up his belongings so he could be moved out of his cell. Docket No. 1 at ¶ 14; Ex. F, Jerry Deposition Excerpts at p. 107 lns. 1-6. Jerry Claims that Richards was not complying with his instructions. Docket No. 1 at ¶ 14. This part of the interaction is not captured on video. The following incidents are captured on Officers Mickey Guidry, Koriell Campbell, Michael Goins and Wyatt Cronin's body cameras:

Prior to entering the cell, Jerry can be seen waiting outside of the cell door for a taser. Ex. A.7, Cronin video at :02-30. Officer Guidry then arrives and hands Jerry a taser and he immediately enters cell tank 231. *Id*. at :30-40. Jerry enters cell tank 231 with a taser in his hand and immediately grabs inmate Richards by the collar of his uniform and drags him out of the cell into the "D-space" which is a small room in between the cell tank and the hallway of the jail. *Id.* at :35 - 45; Ex. A.6, Guidry video at :03-15. Jerry made no verbal commands to inmate Richards prior to grabbing him and dragging him into the D-space of the cell. *Id.* The first thing Jerry can be heard saying to Inmate Richards as he drags him out of the cell is "you got me fucked up motherfucker!". Ex. A.6, Guidry video at :09; Ex. G, Guidry Transcript at 2. Jerry then slams Inmate Richards against the door and wall in the D-space and yells "you got me fucked up . . come on . . . What you gonna do . . . come on." *Id. at* :12-20; Ex. G, Guidry Transcript at 2.  Jerry has his forearm pressed firmly against Richards neck and raises the taser to his head multiple times while taunting him and yelling profanities at him. *Id.* As can be seen in the video, Jerry is much larger than

inmate Richards. *Id.* Richards never resisted or refused to follow any commands or instructions from Jerry. *Id.* Jerry did not even give him the chance to follow any instructions before getting hands on with him. *Id.* Richards then states "do you know who the fuck I am?" and is clearly struggling to speak due to the pressure of Jerry's arm on his neck. *Id.* at 17; Ex. G, Guidry Transcript at 2. Jerry yells back "I don't care who you are, do you know who I am? You better get ready to find out motherfucker". *Id.* at 18; Ex. G, Guidry Transcript at 2.  Jerry then shoves Richards out of the doorway of the D-space and down the hallway and commands him to "walk." *Id.* at 30-37; Ex. G, Guidry Transcript at 2. Richards quietly proceeds to walk down the hall and Jerry gets in his face and states "You not the fuck you think you are". *Id.* at 35-38. Jerry then states "I'm going to put these hands on you motherfucking ass, we're fixing to find out." Ex. A.8, Campbell video at 53-1:00. Jerry is right up in Inmate Richards face as he walks down the hall in what appears to be an attempt to taunt and intimidate him. *Id.* Jerry can then be seen grabbing Inmate Richards by his hair and tossing him through a doorway that leads to the main booking area. *Id.* at 1:03-1:08. Again, Jerry did not attempt to give Inmate Richards any attempt to walk through the doorway himself or instruct him to do so, and went hands on with him for seemingly no reason other than to harass and intimidate him. *See id.* Once inside the booking area, Jerry asks "which one of these tanks you got open?" another jailer responds "286", and Jerry, Richards, and the other jailers (Cronin, Goins, Guidry and Campbell) continue to walk towards cell 286. *Id.* at 1:15; Ex. G, Guidry Transcript at 2. Jerry then opens up the door to cell 286, asks the other jailers to"give me some privacy", and then walks in the cell with Inmate Richards, at which point all of the jailers behind Jerry shut off

their body cameras. *Id.* at 1:28; Ex. G, Guidry Transcript at 2. Jailers Cronin and Goins reported to Chief Deputy Rickie Childers and the Texas Ranger that they saw Jerry physically assault Richards inside of cell 286 through the cell window and heard screaming and loud thuds coming from the cell. Ex A.1, Termination Letter at 1-2; Ex. D, Cronin Declaration at ¶ 4; Ex. E, Goins Declaration at 4.

Surveillance footage from the booking area shows Jerry coming out of the cell over a minute later, with his lanyard off, and he physically shoves inmate Richards back in the cell. Ex. A.5.A, Surveillance video at 1:20; Ex. A.5.B, Surveillance Video at 1:23. A little over a minute later Jerry goes back to the cell and makes Richards take off his orange jumpsuit and places it outside of the cell. Ex. A.5.A, Surveillance video at 2:30-3:00; Ex. A.5.B, Surveillance Video at 2:30-3:00.

The Polk County Sheriff's Office and Jail does not have a policy, custom or practice of placing inmates in separation cells for offending or "disrespecting" jail staff. Ex. B, Lyons Declaration at ¶ 8. Giving the middle finger, cursing, or disrespecting a jail officer is not sufficient stand-alone basis to get hands on and physical with an inmate, especially to the extent Jerry is seen getting physical with Inmate Richards, forcefully grabbing his hair and neck, shoving him into doors and walls, and pointing a taser at his head. *Id.* This is especially true when an inmate is not being resistant or combative. *Id.*

Later on the same day of the incident, Chief Deputy Childers received a call from Justice of the Peace Jamie Richardson informing him that Jailers Wyatt Cronin and Michael Goins had reported to her that Lieutenant William Jerry engaged in an unjustified use of force against inmate Michael Richards at the Polk County Jail. Ex. C, Childers Declaration at ¶ 3; Ex. A.1, Termination Letter at 1.

Cronin and Goins reported the incident to the Justice of the Peace rather than internally, because shortly after the incident, Jerry gathered everyone on staff who witnessed the incident outside of his office and told them that they must turn in a report directly to him before they were allowed to leave the jail that day. Ex. D, Cronin Declaration at ¶ 5; Ex. E, Goins Declaration at ¶ 5. Cronin and Goins were also told by the officer working the control room that Jerry had instructed her not to let any jailers go up to the sheriff's office after the incident. Ex. D, Cronin Declaration at ¶ 5; Ex. E, Goins Declaration at ¶ 5. Goins and Cronin suspected that Jerry was worried that he may get in trouble for the incident due to his aggressive conduct towards inmate Richards, so preventing the jail staff from going to the Sheriff's Office to report the incident, and requiring all reports to be given to him directly, was Jerry's attempt to control the situation and protect himself. Ex. D, Cronin Declaration at ¶ 5; Ex. E, Goins Declaration at ¶ 5. They knew and trusted JP Richardson, as she was frequently at the jail to magistrate inmates, and they felt more comfortable going to someone outside of the jail administration due to Jerry's behavior during and after the incident. Ex. D, Cronin Declaration at ¶ 6; Ex. E, Goins Declaration at ¶ 6.

C. The Investigation and Termination

The following day, February 24, 2021, Chief Deputy Rickie Childers met with Sheriff Lyons and after reviewing the allegations and evidence, the decision was made to refer the matter to Texas Ranger Ryan Clendennen to conduct a criminal investigation. Ex. B, Lyons Declaration at ¶ 8; Ex. C, Childers Declaration at ¶ 5. Chief Deputy Childers handled the internal investigation into whether Jerry's conduct violated the Polk County Sheriff's Office policies and procedures. Ex. C, Childers Declaration at ¶ 5.  Lieutenant Jerry was informed

that the incident was being investigated and he was being placed on suspension pending the outcome of the investigation.  Ex. C, Childers Declaration at ¶ 5. Jerry was also given a copy of his complaint and the videos of the incident Ex. A.12, Letter in re complaint and videos rec'd. by Jerry; Ex. B, Lyons Declaration at ¶ 8. Jerry was instructed to provide a written statement regarding the incident and be interviewed by Chief Deputy Childers, but he refused. Ex. B, Lyons Declaration at ¶ 8.

Chief Deputy Childers reviewed the body camera footage of the incident and found that Jerry grabbed Richards by the back of the neck, physically man-handled Richards, slammed him into the wall two times, placed his forearm on his neck, placed a taser to his head, and that at no time in the video was Richards acting aggressively. Ex. A.1, Termination letter at 1; See Exs. A.6 - A.9. Childers also heard Jerry on the video tell Richards he was going to "put these hands on you" and escorted him to a private cell without an in-cell camera or body camera and ask for privacy from the other officers. Ex. A.1, Termination letter at 1; Ex. A.8, Campbell video at 53-1:00. Jailers Cronin and Goins told Chief Deputy Childers that they saw and heard Jerry physically assault Richards in the private cell. Ex. A.1, Termination letter at 1; Ex. C, Childers Declaration at ¶ 7. Childers attempted to interview Jerry and obtain a written statement from him, but he refused to participate in the County's internal investigation. Ex. C, Childers Declaration at ¶ 6.

It was determined that Lieutenant Jerry's conduct violated Polk County Sheriff's Office/Jail Policy and Procedures sections: 3.18 Rules of Conduct; 1.1 Obedience to Rules for Conduct; 1.11 Conduct Unbecoming; 2.4 Conduct and Behavior; 8.01 Use of Force; 4.30 Body Worn Cameras; and 5.06 Tasers. Ex. A.1, Termination letter at 1; Ex. C, Childers Declaration at ¶ 5; *See also* Ex. A.2.

Specifically, Jerry's use of vulgar and threatening language and excessive use of force against inmate Richards was infamous, notorious, and disgraceful conduct that erodes public respect and reduces confidence in government service in violation of Polk County Jail Policy 3.18 Rules of Conduct, Sections 1.11 (h.) Conduct Unbecoming and 1.1 Conduct and Behavior. Ex. A.2, at PC0631, 33. Jerry engaged in conduct that would "bring reproach, discredit, or embarrass" the law enforcement profession, and his use of "profane, demeaning, or insulting language" violated both sections 2.4 and 2.5 of the Polk County Jail Polices and Procedures, 3.18 Rules of Conduct. Ex. A.2, at PC0634. Jerry violated the use of force policy, as the use of force he used on Richards (forceful shoving, grabbing by the neck and hair, slamming him into the walls, pointing a taser at his head, and all around aggressive behavior) far exceeds reasonable force that can be used on an inmate that is not acting aggressively or resisting. Thus, the amount of force used by Jerry was excessive and violated the Jail's policies regarding Use of Force. *See* Ex. A.2, PC0652-0654. Jerry also never stated his intentions to use force, the reason for the use of force, or asked the inmate to submit to instructions and required signs of compliance. *Id.* at PC0654.  Jerry had a duty to wear his body camera and record the encounter with Richards, as the encounter became "confrontational, assaultive, or otherwise enforcement oriented" pursuant to Polk County Sheriff's Office Policies and Procedures, Policy 4.20 Body Worn Cameras, Section 5 (E.). Ex. A.2, at PC0625-26. Jerry did not wear or activate his body camera in violation of this policy. Finally, there is no policy that tasers may be used for "intimidation" purposes only, particularly on compliant inmates. Likewise, pointing a taser point blank at an inmates head is outside the scope of proper taser use, and was an excessive use of force tactic under the circumstances. *See* Ex. A2, PC0644, Policy number

05.06 A.

On March 2, 2021, Lieutenant Jerry was given his letter of termination, which summarized the findings of the investigation, and informed Jerry of the policies his conduct violated, and that his employment was being terminated. Ex. A.1, Termination letter; Ex. C, Childers Declaration at ¶ 8. Jerry signed the termination letter on the line indicating that he did not agree with the substance of the letter and wished to appeal the termination through chain of command.  Ex. A.1, Termination letter at 2; Ex. C, Childers Declaration at ¶ 8. Jerry refused to provide a statement in support of his objections to the findings in the termination letter. *Id.*; Ex. C, Childers Declaration at ¶ 9.  Sheriff Lyons reviewed the evidence and the findings in the termination letter and made the decision to uphold the termination on March 4, 2021. Ex. A.1, Termination letter at 2; Ex. B, Lyons Declaration at ¶ 10. Jerry never submitted any written objections or statement regarding his termination. Ex. C, Childers Declaration at ¶ 9. Jerry's refusal to participate in the investigation also factored into Jerry's termination. Ex. B, Lyons Declaration at ¶ 10.  Jerry never indicated to Sheriff Lyons, Chief Deputy Childers or anyone else that he thought racial discrimination played a role in his termination. Ex. B, Lyons Declaration at ¶ 10; Jerry never filed an EEOC or TWC charge of discrimination. *Id.* at ¶ 10. Had this unfortunate incident not occurred, Jerry was set to take on the Jail Captain position in the coming weeks, a position that Sheriff Lyons had promoted him to. *Id.* at ¶ 5.

## VI.
## THE SUMMARY JUDGMENT STANDARD

Rule 56(c) requires the entry of summary judgment against a plaintiff who fails to establish the essential elements of his case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-

23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  A party moving for summary judgment must identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden is satisfied by pointing the court to the absence of admissible evidence to support the nonmovants' claims. *See Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 (5th Cir. 1994).  If the movant carries that initial burden, the burden shifts to the party opposing the motion to present competent summary judgment evidence showing the existence of a genuine fact dispute. FED. R. CIV. P. 56 (c). The party opposing the motion must identify specific evidence in the record and articulate the precise manner in which that evidence supports his claim. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994). The evidence must be competent and admissible; unsupported allegations or testimony asserting speculative or conclusory facts or conclusions of law are not sufficient to defeat a motion for summary judgment.  *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

## VII.
## PLAINTIFF'S RACE DISCRIMINATION CLAIMS LACK MERIT

A.    The Section 1981 Claim Must Be Brought Pursuant to Section 1983

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). To establish a § 1981 claim for contractual discrimination, Plaintiffs must allege that (1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the

discrimination concerned one or more of the activities enumerated in the statute—here, making a contract. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994). The analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

However, Section 1981 does not create a private right of action against a governmental entity.  Section 1981 provides a cause of action to remedy racial discrimination by private employers in private employment contracts. *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 462 (5th Cir. 2001) (internal citation omitted). However, a cause of action for a section 1981 civil rights violation against local government actors must be brought under section 1983, not section 1981. *See Jett v. Dallas Independent School District*, 491 U.S. 701, 731, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989) (a section 1981 claim against a local government employee must be asserted through section 1983); *Foley v. University of Houston System*, 355 F.3d 333, 340 (5th Cir. 2003) (same). Moreover, the courts have not imposed personal liability on government officials for discrimination under section 1981. *See Oden*, 246 F.3d at 462, 464.

An employee seeking to recover against a municipal employer under § 1981 "cannot proceed under a theory of *respondeat superior* and must instead satisfy the 'custom or policy' test fashioned for suits against a municipality under § 1983." *See Evans v. City of Houston*, 246 F.3d 344, 358 (5th Cir. 2001) (citations omitted).  As with all claims brought under Section 1983, municipal liability under both Section 1981 and Section 1983 requires proof of three elements in addition to the underlying claim of a violation of rights: a

---

policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom. *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). As such, Plaintiff's claims brought pursuant to section 1981 should be dismissed.

    B.   <u>Plaintiff Cannot Prove a Claim under the McDonnel Douglass\ Burden Shifting Analysis</u>

Discrimination based on race violates the Equal Protection Clause of the 14th Amendment. *E.g., Crawford-El v. Britton*, 523 U.S. 574, 585, 118 S. Ct. 1584, 1590 (1998). Section 1983 and Title VII are "parallel causes of action," and the inquiry into intentional discrimination is essentially the same for actions brought under both statutes. *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007). Thus, the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green* for Title VII employment discrimination claims is also applicable for claims brought under Section 1983. *See*, *e.g. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1, 113 S. Ct. 2742, 2747 n.1 (1993).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination, by showing that: (1) he is a member of a protected group;  (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the defendant employer; and (4) he was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Once a prima facie case is established, the burden shifts to the defendant to give a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 557. This burden is only one of production, not persuasion, and involves no credibility

assessment. *Id.*

If the employer meets its burden of production, the burden then shifts back to the plaintiff, who bears the ultimate burden of proving that the proffered reason is a pretext for discrimination. *Id.* To carry this burden, the plaintiff must rebut each non-discriminatory reason articulated by the employer. *Id.* A Plaintiff alleging race discrimination can avoid summary judgment only if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer, and (2) creates a reasonable inference that race was a determinative factor in the employer's actions. *Valdie v. Mississippi State University*, 218 F.3d 365, 374 n.23 (5th Cir. 2000).

As in all summary judgment proceedings, when Defendant has produced legitimate reasons for terminating Plaintiff, Plaintiff must set forth specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); *Wallace v. Texas Tech Univ*., 80 F.3d 1042, 1047 (5th Cir. 1996). Allegations or affidavits simply setting forth conclusory facts and conclusions of law are insufficient. *Galindo v. Precision Am. Corp*.**,** 754 F.2d 1212, 1216 (5th Cir 1985). Thus, the nonmovant is required to show more than some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 584-86, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Rather, he must put forth "concrete and particular facts." *See Duffy v. Leading Edge Products, Inc*., 44 F.3d 308, 312 (5th Cir. 1995). A mere colorable claim of racial discrimination will not be enough to survive a defendant's motion for summary judgment. *St. Amant v. Benoit*, 806 F.2d 1294,1296 (5th Cir. 1987);

*Monteverde v. New Orleans* Fire Dep't, 124 Fed. Appx. 900, 903-904 (5th Cir. 2005)

Rather, the plaintiff must produce "substantial evidence" of pretext. *Jones v. Gulf Coast Rest. Grp., Inc*., 8 F.4th 363, 368-369 (5th Cir. 2023) The quality and weight of the evidence determines whether it is substantial.  *See Brown v. Wal-Mart Stores East, L.P.*, 969 F.3d 571, 577 (5th Cir.  2020).  In deciding whether summary judgment is warranted, a court should consider, among other things, "the probative value of the proof that the employer's explanation is false" and "any . . . evidence that supports the employer's case." *Id.* at 577-78.

Ultimately, in order to survive a motion for summary judgment, a plaintiff must show a "conflict in substantial evidence" on the question of whether the employer would not have taken the adverse employment action but for the protected status.  *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019).  Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id*. at 561-62   That is, in this case,  Plaintiff must produce evidence sufficient to persuade a reasonable person that Sheriff Lyons reasons for terminating Plaintiff were not that Plaintiff used obviously excessive force against inmate Michael Richards, in the presence of officers he supervised, and that he did not even explain himself when offered the chance or participate in the subsequent internal investigation.  Moreover, the evidence must be sufficient that a reasonable person would have believed that Plaintiff was actually fired because of his race.  *E.g.*, *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)(a plaintiff establishes pretext by showing that a discriminatory motive more likely motivated

the employer).

C.    The Importance of the Video Information

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). When a video of the incident in question exists, the Fifth Circuit "views the facts in the light depicted by the videotape." *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (citing *Scott*, 550 U.S. at 381; *see also Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) ("[W]e assign greater weight, even at the summary judgment stage, to the video recording taken at the scene." (quotation omitted)); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape." (quotation omitted)). "[A] plaintiff's version of the facts should not be accepted . . . when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015)).

D.    Analysis of the Evidence

Plaintiff may not be able to establish a prima facie case. He has not even alleged that he was replaced by someone who was not an African American (Original Complaint, Dkt. #1), nor is there evidence that he was treated differently that others who were similarly situated. Even if he does produce some such evidence, the claim fails for the following reasons.

As set forth in Part VII.B, above, Plaintiff used clearly excessive force on inmate Michael Richards.  A review of the body camera footage makes it clear that Jerry's use of force and intimidation went far beyond what the situation required.  While inmate Richards was disrespectful by giving him the middle finger, he was not presenting any physical threat to Jerry or anyone else.  Accordingly, there was no legitimate reason to enter Richard's cell and certainly no need to use force, let alone excessive force such as forceful shoving, slamming inmate Richards against the wall, grabbing him by the neck and hair, and pointing a taser at his head. The video evidence is clear that inmate Richards was at no time resistant or combative in any manner that would justify the use of force used by Lieutenant Jerry.  So, not only was the use of force (and all of Jerry's behavior) disturbing, it was totally unnecessary because it served no purpose. "Disrespect" of jail staff is not sufficient stand-alone grounds to use force on an inmate or remove him to a separation cell. If an inmate "insults" a jail officer by giving him the middle finger or cursing at him, the ususal procedure is for the jail officer to give that inmate a write up. Ex. B, Lyons Declaration at ¶ 9. If that behavior continues, then an inmate may lose certain privileges, but again there is no policy that an inmate is immediately removed from his cell and placed into a separation cell when he "insults" a jail officer. *Id.* There is certainly no policy that an inmate who "insults" an officer will be physically assaulted and forcefully removed from their cell. Just because an inmate is incarcerated does not mean they lose their civil rights and right to be free from physical assault. Likewise, there was no need for Jerry to request and bring a taser into Richards' cell which he admitted in his deposition he only did for "intimidation" purposes. Ex. F, Jerry Deposition at p. 110, lns. 8-12.

Also, it is clear from the record that Jerry also used force inappropriately after

moving Richards from his cell tank in to the private cell in the booking area. The video evidence shows that Jerry asked the other officers to "give me some privacy" and then entered the cell alone with Richards for over a minute. Ex. A.5.A, Surveillance video at :15 - 1:30; Ex. A.8, Campbell video at 1:28. Officers Goins and Cronin reported seeing Jerry getting hands on with inmate Richards and hearing yelling and thuds from inside the cell. Ex. D, Cronin Declaration at ¶ 4; Ex. E, Goins Declaration at ¶ 4. Jerry can also be seen on the booking area surveillance footage shoving inmate Richards back into the cell when he exits. Ex. A.5.A, Surveillance video at 1:20; Ex. A.4, Surveillance video at 1:20. Again, Richards is not engaging in any resistant behavior that would justify a forceful shove. These actions were investigated and found to be in violation of several of the Polk County Jail and Sheriff's Office Policies and Procedures. *See supra*, Section V. C., pgs. 10-12.

Finally, Plaintiff refused to participate in the investigation of his actions, and refused to provide any statement or explanation of his behavior. It is a violation of the Polk County Sheriff's Office policies to refuse to participate in an investigation, and refusal to answer questions as a part of an investigation can result in job termination. Ex. A.11, Jerry Garrity Warning; Ex. B, Lyons Declaration at ¶10.Jerry's refusal to participate in the investigation also factored into his termination. Ex. B, Lyons Declaration at ¶10.

In reviewing all of the evidence to determine whether Plaintiff has proven pretext, it is important to note that the evidence is uncontroverted that Polk County Sheriff Byron Lyons considered Plaintiff a friend and had a good working relationship of approximately sixteen years. Ex. B, Lyons Declaration at ¶ 5. Plaintiff does not contest this in his deposition testimony that he had known and worked with Sheriff Lyons for seventeen years, and until his termination, Lyons had never done anything that he perceived as racist

towards him. Ex. F, Jerry Deposition Excerpts at p. 165, lns. 2 - 17.

        More importantly, Sheriff Lyons had just given Plaintiff a promotion to Jail Captain.

Moreover,  Plaintiff had accepted the job and the Human Resources Department had been

notified.  Ex. B, Lyons Declaration, ¶ 2; Ex. F, Deposition of William Jerry, p. 39, lns. 15-17;

Ex. A.3, Promotion Letter. Jerry was simply waiting for the retiring Captain to step down in

the coming weeks to take on the new Captain position, the highest ranking position in the

Jail.

        While not dispositive of the issue of pretext, it is well-established in the Fifth Circuit

that when the same individual hires and terminates a Plaintiff, an inference arises that

there was no discriminatory motive.  See *Tellepsen Pipeline Servs. Co. v. N.L.R.B.*, 320

F.3d 554, 569 n.4 (5th Cir. 2003) (stating that the "same actor" inference arises when the

same person hires and fires an employee to suggest that the termination was not likely the

result of an improper motive); *Brown v. CSC Logic, Inc*., 82 F.3d 651, 658 (5th Cir. 1997

(same, but also "[t]he fact that the actor involved in both employment decisions is also a

member of the protected class only enhances the inference."); *Spears v. Patterson UTI*

*Drilling Co.*, 337 Fed. Appx. 416, 421-22 (5th Cir. 2009) (The same actor inference  creates

a presumption that *animus* was not present where the same actor responsible for the

adverse employment action *either hired or promoted* the employee at issue)(emphasis

added);*Stover v. Hattiesburg Pub. Sch. Dist*., 549 F.3d 985, 994-95 (5th Cir.

2009)(upholding as proper this jury instruction: "[i]f you find that the same person who hired

the plaintiff is also one of the people who allegedly discriminated against her, you may

consider it inherently inconsistent that an individual who is willing to hire or promote a

person who is a member of a protected class will discriminate against that same individual

because she is a member of that class."). Here, not only was Sheriff Lyons the same individual who made the decision to promote Jerry to Captain, this decision was made and memorialized in a letter to human resources only one month and two days before the incident that resulted in Plaintiff's termination. Plaintiff would like the Court and a jury to believe that within one month's time, Sheriff Lyons went from trusting Plaintiff with the highest ranking position in the jail to terminating him because he is black. No reasonable juror could reach such an illogical conclusion, especially considering that Sheriff Lyons is also African-American and he and Jerry were friends for years, and never had any problems until he was terminated.

For the reasons explained in this Motion, and based on the evidence in this case, Plaintiff cannot show pretext.  The totality of the record establishes that Plaintiff's use of force against Michael Richards, which occurred in the presence of several of the people he was charged with supervising, was so egregious that no evidence that Plaintiff could produce could lead a reasonable juror to conclude that Plaintiff was not actually fired for his documented conduct.  Moreover, Plaintiff's racial discrimination allegations are particularly weak, because Plaintiff maintains that he was discriminated against because he was an African American, by someone who is also African American that had just promoted him. Plaintiff has provided no evidence, let alone substantial evidence, to show that racial discrimination was the pretext for Plaintiff's termination. Plaintiff has failed to meet his burden of providing substantial evidence to combat Polk County's legitimate, non-discriminatory reason for his termination (he assaulted an inmate in violation of numerous Polk County Sheriff's Office policies and procedures and refused to answer questions or provide a statement as part of the investigation). Because Plaintiff cannnot

establish a prima facie case or establish pretext, Defendants are entitled to summary judgment on the race discrimination claim.

    E.  <u>Plaintiff Must Show The Official Policy of the County Caused the Violation</u>

      Even if Plaintiff had created a fact issue on whether he was a victim of discrimination, which he cannot, his claim still will fail, because he cannot prove that any discrimination was caused by the official policy of the County.  Section 1983 provides the sole remedy for claims of racial discrimination and retaliation against a government entity under § 1981. *Oden v. Oktibbeha Cty.*, Miss., 246 F.3d 458, 462 (5th Cir. 2001) (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)). An employee seeking to recover against a municipal employer under § 1981 "cannot proceed under a theory of *respondeat superior* and must instead satisfy the 'custom or policy' test fashioned for suits against a municipality under § 1983." *See Evans v. City of Houston*, 246 F.3d 344, 358 (5th Cir. 2001). "Municipal liability under  both Section 1981 and Section 1983 requires proof of three elements in addition to the underlying claim of a violation of rights: 'a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.'" *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Moreover, the description and evidence of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

      In the present case, then, Plaintiff cannot survive a motion for summary judgment, unless he offers facts that establish, not only that the termination of Plaintiff was based on

his race, but also that this violation was caused by the official policy of the County.  The evidence in this case is that the official policy of the County is that no employment decisions are made based on race. Ex. B, Lyons Declaration at ¶ 5. Further, as shown above, it is clear that Plaintiff was terminated for conduct that violated several Polk County Sheriff's Office Policies, and possibly the civil rights of inmate Richards and the laws of the State of Texas. There is simply no evidence that Sheriff Byron Lyons, as policy maker of the Polk County Sheriff's Office, had a policy of discriminating against his African-American employees. What makes this allegation patently absurd is: 1) Sheriff Lyons is himself an African-American man; 2) Sheriff Lyons had a good working relationship and been friends with William Jerry for over 16 years; 3) until his termination, Jerry had never witnessed Sheriff Lyons engage in racially discriminate behavior; and 4) Sheriff Lyons had promoted Plaintiff to Jail Captain, the highest position in the jail, just one month and a few days prior to his termination. Plaintiff has made no attempt in his pleadings to reconcile any of these facts with his accusation that Sheriff Lyons and the Polk County Sheriff's Office have an established policy, custom, or practice of discriminating against employees based on race. Plaintiff has failed to meet his burden of showing a policy, custom or practice of racial discrimination was the moving force behind his termination, and for this reason, his claims against Defendants should be dismissed.

## VIII.
## The Polk County Sheriff's Office Lacks a Jural Existence

Plaintiff has sued the Polk County Sheriff's Office as a separate legal entity. Defendant Polk County Sheriff's Office seeks to have the lawsuit against it dismissed because the Polk County Sheriff's Office lacks a jural existence and cannot be a party to

this lawsuit. The capacity of an entity such as a sheriff's office or police department to sue or be sued "'should be determined by the law under which it was organized.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting FED. R. CIV. P. 17(b)); *Dillon v. Jefferson County Sheriff's Dep't*, 973 F. Supp. 626, 627 (E.D. Tex. 1997); *Jacobs v. Port of Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996). In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation (the county in the case of the county's Sheriff's Office) "to grant the servient agency with jural authority." *Jacobs*, 915 F. Supp. at 844 (citing Darby, 939 F.2d at 313; *Thomas-Melton v. Dallas County Sheriff's Dep't*, 39 F.3d 320 (5th Cir. 1994); *Alcala v. Dallas County Sheriff*, 988 F.2d 1210 (5th Cir. 1993)). Polk County has not done so, and Plaintiff has made no allegations that Polk County has done so. Because there is no indication that the Polk County Sheriff's Office enjoys a separate legal existence, it is not a proper party, and the causes of action against it should be dismissed. *Jacobs*, 915 F. Supp. at 844.

## IX.
## CONCLUSION

The video evidence speaks for itself in this case. Lieutenant Jerry can be seen on four separate body cameras and two surveillance cameras engaging in conduct that violates several Polk County Sheriff's Office policies. Jerry's conduct is truly shocking to the conscious, especially considering he had over twenty years in combined law enforcement and corrections experience, and was a Lieutenant in the process of being promoted to Captain. Conduct like this is what erodes the public trust in law enforcement. Plaintiff's claim that his race was the reason for his termination is unfounded and exhibits

a lack of accountability. The Summary Judgment evidence clearly establishes that it was not Mr. Jerry's race, but his own actions that resulted in his termination. Plaintiff cannot meet his burden to establish intentional racial discrimination, and that a Polk County policy, custom, or practice of racial discrimination was the moving force behind his termination. Defendants are entitled to summary judgment, and Plaintiff's claims should be dismissed.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants Polk County, Texas and the Polk County Sheriff's Office respectfully request that the Court grant this Motion for Summary Judgment, dismiss this case with prejudice in its entirety and for any and all other relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

**FLOWERS DAVIS, P.L.L.C.**
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
(903) 534-1650 Facsimile

**JOHN "JACK" R. FULGHAM**
State Bar No. 24105638
jrf@flowersdavis.com

**ROBERT S. DAVIS**
State Bar No. 05544200
rsd@flowersdavis.com
Lead Attorney

**ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing instrument was served upon all counsel of record in the above entitled and numbered cause on October 31, 2024, in the following manner:

   <u>X</u>   Via ECF

_____
**John "Jack" R. Fulgham**