EXHIBIT "A.2"

## POLK COUNTY SHERIFF'S OFFICE
### Texas Law Enforcement
### Policies and Procedures

| Subject: In-Car and Body Worn Cameras | Policy Number: 4.30 |
|---|---|
| Issue Date: 02/01/2016 | Revision Date: |
| Approval Authority<br>Title and Signature: | |

## PURPOSE

The purpose of this order is to establish policy and guidelines for the use of In-Car and Body-Worn Video Cameras by officers of the Polk County Sheriff's Office.

## 2    POLICY

It is the policy of the Polk County Sheriff's Office that patrol vehicles will be equipped with video/audio recording equipment and that officers will have access to body-worn video cameras. The function of this equipment is to accurately document the events, actions, conditions, and statements made during vehicle stops, pedestrian contacts, arrests, and critical incidents so as to enhance officer reports, collection of evidence, and testimony in court. This recording will also enhance the Department's ability to review probable cause for arrest, arrest procedures, officer and suspect interaction, evidence for investigative purposes, as well as for officer evaluation and training.

## 3    DEFINITIONS

A.    *Body-Worn Camera (BWC)* is defined as any device that can be worn on the body and captures digital multimedia evidence.

B.    *In-Car Video Camera Systems* are defined as any device attached to a police vehicle which captures digital multimedia evidence.

C.    *Digital Multimedia Evidence (DME)* consists of all digital recordings, to include but not limited to audio, video, photographs and their associated metadata. Metadata includes any digital identifiers that are captured as part of the actual recording, such as date/time, GPS coordinates, labeling, etc.

D.    *Private Space* means a location in which a person has reasonable expectation of privacy, including a person's home.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0624

| Texas Law Enforcement Policies and Procedures,4.30 In-Car And Body Worn Cameras |
|---|

## 4   LEGAL ISSUES

A.   In-Car Video Camera System and BWC equipment and all data, images, videos and metadata captured, recorded, or otherwise produced by the equipment is the property of the Polk County Sheriff's Office.  The personal use of any information recorded by an In-Car Video Camera System or BWC shall only be pursuant to the prior written approval of the Sheriff or his designee.

B.   Use of In-Car Video Camera Recordings or BWCs for purposes other than in accordance with this policy is prohibited.

C.   All data, images video and metadata captured by In-Car Video Cameras or BWCs are subject to state statutes and County policies regarding retention of records.

D.   The Department's Inventory / Evidence Technician shall annually prepare a report on all known costs associated with BWC equipment purchases and related data storage to forward to the state as required by the Texas Occupations Code, Sec. 1701.653.

## 5   PROCEDURES

A.   The recording equipment installed in the vehicles, and the portable audio transmitter, are the responsibility of the officer assigned to the vehicle containing the equipment.  The equipment shall be operated and maintained according to the manufacturer's instructions and recommendations and by the guidelines set forth in this General Order.

B.   Officers who are assigned BWC equipment must use the equipment unless otherwise authorized by supervisory personnel. Officers may only use BWC equipment issued to them by this department. No personally owned BWC equipment may be used.

C.   In-Car Video Camera Systems, BWCs and equipment should be used with reasonable care to ensure proper functioning. Equipment malfunctions shall be brought to the attention of the officer's supervisor as soon as possible so that a replacement unit may be assigned. Officers shall inspect and test the In-Car Video Camera System and BWC prior to each shift to verify proper functioning, and shall notify their supervisor of any problems. Officers shall also ensure that their recorders are equipped with sufficient memory/storage remaining to last through their shift.

D.   The In-Car Video Camera System recording equipment will automatically activate when the vehicle's emergency lights are in operation.  The recording equipment may be manually deactivated during non-enforcement activities such as protecting accident scenes from other vehicular traffic.

E.   Officers **WILL** ensure that the recording equipment is turned on, properly positioned, and adjusted to record events during their tour of duty.   Officers

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

Page 2 of 7

PC0625

**Texas Law Enforcement Policies and Procedures,4.30 In-Car And Body Worn Cameras**

**WILL** carry and activate a wireless microphone upon their person.   Officers **WILL** audio/video record the following:

1. All enforcement contacts, such as arrests, detentions, vehicular and pedestrian stops, field interviews of suspicious or other persons.

2. Non-enforcement contacts should they become confrontational, assaultive, or otherwise enforcement oriented.

3. Transporting prisoners (in-car video system).

4. All emergency driving situations including pursuits, emergency runs, responses to priority one calls, or responses to priority two calls even if emergency equipment (lights and siren) are not activated.

5. Other events when the recording could have value as evidence, to limit liability, or to resolve citizen complaints.

F. Officers have the discretion to not record during conversations with crime witnesses and members of the community who wish to report or discuss criminal activity in their neighborhood or any non-confrontational encounter that may be deemed as a law enforcement encounter.   If these conversations contain valuable evidence it is advisable to record the incident.

G. Deactivation of the In-Car Video Camera System or BWC shall occur when:

1. The event has concluded;

2. Victim and/or witness contact has concluded;

3. All persons stopped have been released;

H. BWCs need not be activated when it is unsafe, unrealistic or impractical to do so. In the event an officer fails to activate the In-Car Video Camera System or BWC during a call for service or enforcement action, or when an entire contact is not captured or equipment is manually deactivated, officers shall properly document the reasons for this action. This may be accomplished in the incident report, supplement report if appropriate, or call sheet comments if no report is written.

1. The justification for failing to activate the BWC because it is unsafe, unrealistic, or impracticable is based on whether a reasonable officer under the same or similar circumstances would have made the same decision.

I. Officers shall not be required to activate the In-Car Video Camera System or BWC when engaged in conversations with individuals with whom the officer is in a privileged relationship (e.g., spouse, attorney, police peer counselor, labor representative, minister, etc.). An officer may not be required to keep a BWC activated for the entire duration of his/her shift.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

Page 3 of 7

PC0626

| Texas Law Enforcement Policies and Procedures,4.30 In-Car And Body Worn Cameras |
|---|

J.    Officers shall not edit, alter, erase, duplicate, copy, share, or otherwise distribute in any manner In-Car Video Camera System or BWC images and information without the prior written approval of the Sheriff or designee. Copies may only be made for court, training, or other purposes specifically approved by the Sheriff or his designee. Officers should be cognizant that the unauthorized release of a recording created with a body-worn-camera is a criminal offense under the Texas Occupations Code.

K.    Officers shall be allowed to review the recordings from their In-Car Video Camera System or BWC at any time. To help ensure accuracy and consistency, officers are encouraged to review recordings prior to preparing reports. If the officer is giving a formal statement about the use of force or if the officer is the subject of a disciplinary investigation, the officer shall:

1.    Have the option of reviewing the recordings; and

2.    Have the right to review recordings from other recording devices (body-worn cameras, other officers' in-car videos, etc.) which may have captured the officer's image or voice during the underlying incident.

L.    In-Car Video Camera Systems and BWCs shall not be used to record:

1.    Communications with other police personnel.

2.    Encounters with undercover officers or informants.

3.    In any location where individuals have a reasonable expectation of privacy, such as a restroom, locker room, or break room (BWCs only). Exceptions would be during a critical incident where the officer feels it is necessary to record.

4.    When an officer would be recording a patient during a medical or psychological evaluation by a clinician or similar professional, or during treatment. When recording in hospitals or other medical facilities, officers shall be careful to avoid recording persons other than the suspect (BWCs only).

5.    Communications made in a psychiatric facility, unless responding to a call involving a suspect who is thought to be present in the facility.

M.    Officers shall, at the conclusion of any call for service or incident which has been recorded on their In-Car Video Camera System, close out the video using the appropriate designation of the recording or using the case number assigned to that call for service or incident. At the end of their tours of duty, officers will ensure that their In-Car Video System downloads all recordings made since the previous download, and will ensure that all BWC recordings made during their tour of duty are properly downloaded utilizing established protocols.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0627

| Texas Law Enforcement Policies and Procedures,4.30 In-Car And Body Worn Cameras |

N.    Videos from each vehicle (in-car) and each officer (BWC) involved in or at the scene of a vehicular pursuit, use of force, officer-involved shooting, in-custody death, or other incident involving an officer that results in bodily injury or death to a person, shall be uploaded as soon as practical to the appropriate server location per established protocol. A hard evidence disk should also be made preserving the evidence in the designated location.

## 6    <u>SUPERVISORY REVIEW</u>

A.    Supervisors may review any In-Car Video Camera System or BWC videos at any time and may authorize another member to do so for the purposes of investigation, incident reviews, counseling or any other law enforcement purpose. Furthermore, detectives and investigators of the Department may review any In-Car Video Camera System or BWC video as needed to perform their duties within the Department.

B.    On at least a bi-monthly basis, supervisors shall randomly review at least two (2) Digital Multimedia Evidence videos to assist in periodic assessment of officer performance, determine whether audio/video equipment is being fully and properly used and to identify material that may be appropriate for training. Any suspected deficiencies, policy issues, or training issues observed should be noted to the appropriate Division Commander for resolution. Any policy violations or criminal acts should be documented by memorandum and forwarded through the chain of command to the office of the Sheriff.

## 7    <u>HANDLING AND RETENTION OF DIGITAL MULTIMEDIA EVIDENCE</u>

A.    DME will be stored within a secure CJIS compliant server or online cloud database based on the best method to meet the needs of the Department. For prosecution, training and other law enforcement operations, the DME may be copied from its stored location to a portable storage device (CD, DVD, thumb drive, etc.).

B.    All files from In-Car Video Camera Systems and BWCs shall be securely stored in accordance with state records retention laws and for no longer than useful for purposes of training, or for use in an investigation or prosecution (including appeals), or for use in resolving a claim, pending litigation, or disciplinary investigation. In capital punishment prosecutions, files shall be kept until the alleged offender is no longer under control of a criminal justice agency.

C.    Personal use or the uploading of recorded data onto public or social media websites without written authorization from the Sheriff or his desgnee is prohibited. Should the need to release DME to the news media arise, the Public Information Officer will do so at the discretion of the Sheriff.

D.    All stored DME is subject to release in accordance with the state public records retention laws. Public requests through the Freedom of Information Act will be

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0628

| Texas Law Enforcement Policies and Procedures,4.30 In-Car And Body Worn Cameras |

handled according to the State law pertaining to open records.  These requests will be handled through the Records Section or person(s) designated to handle open records requests.

E.  DME which was made in a private space will not be released; nor will recordings involving the investigation of conduct that constitutes a misdemeanor punishable by fine only and does not result in arrest, without written authorization from the person who is the subject of that portion of the recording or, if the person is deceased, from the persons authorized representative.

F.  Recordings from In-Car Video Camera Systems and BWCs may be shown for training purposes upon completion of a criminal case. All such use shall be pursuant to the written authority of the Chief.

G.  The retention and destruction of DME shall be pursuant to state public records retention schedules. Videos will be stored for a period of not less than ninety (90) days.  After that time videos will be deleted from the system unless they have been determined to have evidentiary or other value. Videos of evidentiary value shall be attached to the appropriate case in the Department's Records Management System (RMS) for preservation. Videos of administrative or other value shall be uploaded to the appropriate server folder(s) and held per statutory law or regulation governing the retention of such records.

## 8    TRAINING

A.  Officers and any other personnel who will come into contact with video and audio data obtained from the use of in-car and BWC recording systems shall receive Department approved training on the proper operation, use and care of the equipment and the Department's policy with respect to the use of such systems.  Additional training shall be provided at periodic intervals to ensure the continued effective use of the equipment, proper calibration and performance, and to incorporate changes, updates, or other revisions in policies or equipment.  This training should include but not be limited to:

1.  Practices and protocols covered by this policy;

2.  Relevant state laws governing consent, evidence, privacy and public disclosure;

3.  Procedures for operating the equipment safely and effectively;

4.  Scenario based exercises that replicate situations that officers might encounter in the field;

5.  Downloading and tagging recorded data;

6.  Accessing and reviewing recorded data;

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

Page 6 of 7

PC0629

<div style="border:1px solid black; display:inline-block; padding:4px;">Texas Law Enforcement Policies and Procedures,4.30 In-Car And Body Worn Cameras</div>

7.   Preparing and presenting digital evidence for court;

8.   Documenting and reporting any malfunctioning device or supporting system;

9.   Supervisors will receive training relative to accessing subordinates videos for review and distribution according to the expectations outlined herein.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

Page 7 of 7

PC0630

## POLK COUNTY JAIL

## Policies and Procedures

| Subject: Rules of Conduct | Policy Number: 3.18 |
|---|---|
| Issue Date: 11/19/2010 | Revision Date: |
| Approval Authority<br>Title and Signature: Sheriff Kenneth Hammack | |

**POLICY:**

POLK COUNTY JAIL employees will conduct themselves professionally and responsibly at all times in order to uphold the trust and confidence placed in them by the community.

**PENOLOGICAL INTEREST:**

In order to maintain the trust and confidence of the citizens that we serve, it is the penological interest of this facility to maintain strict adherence to the policies and procedures of POLK COUNTY JAIL.

**PROCEDURES:**

**General Guidelines:**
Employees are expected to follow facility rules of personal conduct in both the spirit and content, and encourage compliance by fellow employees. Command and supervisory level employees should be role models and are expected to demonstrate leadership and set exemplary standards.

**Section One - Obedience to Orders, Rules And Laws:**

1.1    Obedience to Rules of Conduct

All employees will be governed by the following general rules of conduct. Violation of any of these rules will be considered sufficient cause for disciplinary action up to and including dismissal.

1.2    Obedience to Laws

Employees will abide by the laws of the United States, the state of Texas, and the ordinances of Polk County.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 1 of 13

PC0631

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

1.3    Adherence to Facility Rules

Employees will abide by properly issued internal directives of the facility.

1.4    Insubordination

Employees will promptly obey all lawful orders and directions given by supervisors. The failure or deliberate refusal of employees to obey such orders will be deemed insubordination and is prohibited. Flouting the authority of a superior by displaying obvious disrespect or by disputing his orders will likewise be deemed insubordination.

1.5    Issuance of Unlawful Orders

No supervisory employee will knowingly or willfully issue an order that violates a federal or state law, a «citycounty» ordinance, or a facility rule or policy.

1.6    Obedience to Unjust or Improper Orders

If an employee receives an order he believes is unjust or contrary to a facility order or rule, he must first obey the order to the best of his ability and then may appeal the order to the Jail Administrator.

1.7    Obedience to Unlawful Orders

No employee is required to obey an order that is contrary to the laws of the United States, the state of Texas, the ordinances of Polk County, or policies established by this facility. If an employee receives an unlawful order, he will report in writing the full facts of the incident and his action to the Jail Administrator thru the chain of command.

1.8    Conflict of Orders

If an employee receives an order that conflicts with one previously given him by a superior employee, the employee receiving the order will respectfully point this out to the superior employee who gave the second order. If the superior employee giving the second order does not change the order in a way that eliminates the conflict, the second order will stand and will be the responsibility of the second superior employee. If the second superior employee so directs, the second order will be obeyed first. Orders will only be countermanded when necessary for the good of the facility, and accomplishment of the mission.

1.9    Duty to Read, Understand, and Comply With Orders

Failure to read and/or comply with laws, rules and regulations, general and special

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0632

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

orders, policies and procedures of the facility, or written or verbal orders of a supervisor is prohibited. It *is neglect of duty* to fail to inquire of a supervisor the meaning or application of any directive or order that is not clearly understood.

1.10    Issuance of Orders

Orders from supervisors to subordinates will be in professional, clear, understandable English; civil in tone, and manner; and, issued in pursuit of facility business.

1.11    Conduct Unbecoming

Conduct that adversely affects efficiency, erodes public respect, or reduces confidence in government service is unbecoming and is prohibited. Examples of such conduct includes, but is not limited to:

a. Fraud in securing employment;
b. Conviction of any felony or of a misdemeanor involving moral turpitude, or the entry of a plea *of nolo contendere* to either;
c. Misuse of government funds or property;
d. Falsification or misuse of government records, including application forms, time and financial records, incident reports, case files, or personnel;
e. Reporting to work or working under the influence of alcohol or substances that significantly impair job performance, or the use of such substances during working hours; except prescribed medication that does not adversely affect the ability to perform assigned work tasks;
f. Instigation of, participation in, or leadership of a *strike, sit-down, stay-in, sympathy strike, walk-out, slow-down, sick-out*, or any other interference with normal, efficient workflow;
g. Concealment or failure to report any employment, ownership interest, or personal activity in conflict with the legitimate interests of Polk County;
h. Engaging in infamous, notorious, or disgraceful conduct that adversely affects Polk County's legitimate interests;
i. Insubordinate, rebellious, disruptive, harassment, or disrespectful behavior toward other employees or government officials; or
j. Fighting.

**Section Two - Attention to Duty:**

2.1    Performance of Duty

Employees will be attentive to their duties at all times, and will perform all duties assigned to them even if such duties are not specifically assigned to them in any facility rules or procedures manual.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 3 of 13

PC0633

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

### 2.2 Duty of Supervisors

Supervisors will enforce the rules, regulations and policies of POLK COUNTY JAIL. They will not permit or otherwise fail to prevent, violations of the law, facility rules, policies or procedures. They will report violations of facility rules, policies, or procedures to their immediate superiors without delay. When possible, they will actively prevent such violations or interrupt them as necessary to ensure efficient, orderly operations.

### 2.3 Truthfulness

Employees will not knowingly give any false or misleading information concerning the duties, responsibilities or actions of the facility or any member thereof, nor withhold any information that is their duty to report, nor falsify any facility documents.

### 2.4 Conduct and Behavior

Employees whether on-duty or off-duty will follow the ordinary and reasonable rules of good conduct and behavior and will not commit any act in an official or private capacity tending to bring reproach, discredit, or embarrassment to their profession. Employees will follow established procedures in carrying out their duties as employees of the facility.

### 2.5 Respecting the Rights of Inmates

Employees will respect the rights of inmates and will not engage in discrimination, oppression or favoritism. Employees will maintain a strictly impartial attitude toward all inmates. Use of profane, demeaning, or insulting language will not be tolerated, nor will disrespect for the political or religious views of inmates be accepted.

### 2.6 Employees Always Subject to Call of Duty

While off-duty, employees will respond to lawful orders of supervisors and are expected to take prompt and proper action when life is endangered within the facility. Employees are subject to call twenty-four (24) hours a day and may be recalled from vacation leave or off day whenever necessity demands.

### 2.7 Reporting for Duty

Employees will promptly report for duty properly prepared at the time and place required by assignments, subpoenas or orders. Employees will remain at their posts or place of assignment until properly relieved by another employee or until officially dismissed by a supervisor. It is the relieving employees' responsibility to locate and meet with the employee he is relieving. The employee who is being

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0634

relieved has the responsibility to pass onto his relief any and all pertinent information. The relieving employee will assist the employee he is relieving in any way possible so as to expedite the relief and complete the employee's shift in a timely way.

### 2.8    Availability While on Duty

Employees while on duty will not conceal themselves or maintain a hidden or low profile. Employees will keep themselves immediately and readily available at all times while on duty.

### 2.9    Prompt Response to All Calls

Employees will respond to all calls for assistance within the facility without argument and unnecessary delay. No employee will fail to aid, assist, or protect a fellow employee, citizen or inmate to the fullest extent of his or her professional capabilities.

### 2.10    Duty to Report All Crimes and Incidents

Employees will promptly report all serious crimes, emergencies, incidents, dangers, hazardous situations and relevant information that come to their attention. Employees will not conceal, ignore or distort the facts of such crimes, emergencies, incidents and information.

### 2.11    Sleeping on Duty

Employees must be alert throughout their shift. Sleeping while on duty is strictly forbidden.

### 2.12    Assisting Criminals

Employees will not communicate in any manner, directly or indirectly, any information that may delay an arrest or enable inmates suspected of criminal acts within POLK COUNTY JAIL to escape arrest or punishment. Nor will employees dispose of property or goods seized or taken from a suspect, or destroy evidence of unlawful activity.

### 2.13    Reading on Duty

Employees will not read newspapers, books, or magazines while on duty unless authorized by a supervisor.

### 2.14    Studying on Duty

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 5 of 13

PC0635

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

Employees will not engage in any studying activity during their regularly assigned working hours that are not directly related to their current job assignment.

## 2.15 Maintaining Communications

Employees will be directly available by normal means of communication while they are on duty or officially on-call, and will promptly respond when notified.

## 2.16 Keeping Notes on Facility Activities

Employees will maintain written notes on facility matters such as incidents, arrests and other activities to the extent that they may later complete official reports and accurately testify in official proceedings.

## 2.17 Completing Official Reports

Unless otherwise directed, employees will promptly submit all reports completed prior to going off duty. All reports utilized in this facility will be completed in black ink, computer printed, or typed. Special projects may require deviation from this requirement.

## 2.18 Reporting Accidents and Injuries

Employees will immediately report the following accidents and injuries:

a. Personal injuries received in the line of duty
b. Personal injuries not received in the line of duty but which are likely to interfere with performance of official duties
c. Injuries to inmates or other employees that resulted from the performance of his official duties.
d. Any Response to Resistance incident.

## 2.19 Reporting Address and Telephone Number

Employees will have a working telephone at their residence and will register their correct residence address and telephone number with the jail facility. Any change in address must be reported immediately.

## 2.20 Testifying in Facility Investigations

Employees will make statements or furnish materials relevant to a facility investigation as required.

## 2.21 Overtime

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0636

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

Authorized supervisors must approve overtime requests prior to the actual time work begins.

### 2.22 Duty to be Prompt and Punctual

Employees will be prompt and punctual when reporting to their official duties.

### 2.23 Remaining at Duty Station

Employees will remain at their duty post unless and until they are properly relieved. Absence from assigned workstation or duty without permission is prohibited.

### 2.24 Excessive Absenteeism

Habitual or patterned use of sick leave or leave without pay, not supported by competent medical evidence or other proof of necessity is prohibited.

### 2.25 Prohibited Association / Frequenting

Associating with people, organizations, or places outside of POLK COUNTY JAIL known to be involved in criminal activity is prohibited.

### 2.26 Subversive Organizations

Employees will not knowingly be members of, or affiliated with, any subversive organization whose avowed purpose advocates the overthrow or disruption of the lawful function of any federal, state, county, or municipal government.

### 2.27 Duty With Regard to Civil Proceedings

No employee will initiate any civil proceedings arising out of a facility activity without first notifying the Jail Administrator.  Private civil actions that have no connection with a member's facility position or official action are not within the scope of this rule.

### 2.28 Supplies or Services

Employees will not use facility supplies or resources for personal use.  The use of the time, space, equipment or supplies of the facility for private gain or advantage is prohibited.

### 2.29 Bulletin Boards

Employees are responsible for reading notices posted on official bulletin boards.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

PC0637

---

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

---

### 2.30    Refrained From Conducting Personal Business While On-Duty

Employees will not conduct personal business while on-duty without prior approval from their supervisor.

### 2.31    Use of Tobacco Products

Use of tobacco products while in any Polk County building, or at any time while in personal contact with the public is prohibited.

### 2.32    Confidentiality / Protection From Retaliation

The identity of persons reporting harassment will be protected to the extent allowed by law. Any employee reporting harassment or unwanted conduct will not be retaliated against. Any employee who engages in such retaliation will be discharged.

## Section Three - Cooperation with Fellow Employees and Agencies:

### 3.1    Respect for Fellow Employees

Employees will treat other employees with respect, as they would prefer to be treated. They will be courteous, civil, and respectful of their superiors and their associates.

Supervisory personnel will support subordinates in their actions and orders when they can do so reasonably. They will avoid censuring subordinates in the presence of others and will not injure or discredit those under their authority by intentional or abusive conduct. This does not prohibit informal oral reprimands or constructive criticisms directed to a subordinate. Any acts of counseling, disciplining, complaining or criticizing must be done positively and constructively in an appropriate setting.

### 3.2    Supporting Fellow Employees

Employees will cooperate, support, and assist each other at every opportunity. Employees will not maliciously criticize the work or the manner of performance of another. It is the duty of every employee to refrain from originating or circulating any malicious gossip to the intended detriment of the facility or any member thereof.

### 3.3    Cooperation with Other Agencies

Employees of POLK COUNTY JAIL will cooperate with all governmental agencies by providing whatever aid or information such agencies are legally entitled to receive. Any doubts will be passed to a supervisor for approval, before cooperation

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0638

is rendered.

### 3.4 Disclosing Information Relating to Facility Operations

Discussion of operations and official business of the facility is prohibited outside of those authorized individuals that have a *need to know.*

### 3.5 Misconduct Known to Personnel

Failure to report an employee's violation of a law, rule or regulation, policy or procedure, or a general or special order is prohibited.

## Section Four - Restrictions on Behavior:

### 4.1 Soliciting and Accepting Gifts and Gratuities

Unless approved in writing by the Sheriff, employees of the facility may not solicit or accept any *reward, gratuity, gift or compensation* for services performed as a result of their relationship with the facility. This *restriction applies regardless of whether the service was performed on-duty or* off-duty.

### 4.2 Soliciting and Accepting Gifts from Inmates

Employees are strictly prohibited from soliciting or accepting any *gift, gratuity, loan, fee* or other item of value, or from *lending* or *borrowing,* or from *buying* or *selling* anything of value from or to any inmate.

### 4.3 Reporting Bribe Offers

If an employee receives a bribe offer, he will immediately make a written report to the Jail Administrator and submit it to his immediate supervisor.

### 4.4 Accepting Gifts from Subordinates

Without approval from the Jail Administrator, employees will not receive or accept any gift or gratuity from subordinates.

### 4.5 Giving Testimonials and Seeking Publicity

As it may pertain to their employment with the facility, employees will not give testimonials or permit their names or photographs to be used for commercial advertising purposes. Employees will not seek personal publicity either directly or indirectly in the course of their employment.

### 4.6 Soliciting Business

**RESTRICTED LAW ENFORCEMENT DATA**

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0639

Employees will not solicit subscriptions, sell books, papers, tickets, merchandise or other items of value nor collect or receive money or items of value for any purpose while on duty unless specifically authorized in writing by the Jail Administrator.

4.7    Intoxication

Employees will not be under the influence of any intoxicating beverage or substance during their shift or immediately prior to their shift. Nor will employees be intoxicated off duty while in the public view. Employees will not use any intoxicating substance while off duty to such an extent that they become unfit to report for duty.

4.8    Drinking While in Uniform or On –Duty

Employees will not consume alcoholic beverages while in uniform, on duty, on government property, or in an official vehicle of this facility. Employees will not drive or operate motor vehicles within eight hours after consuming alcoholic beverage(s).

4.9    Liquor on Official Premises

Employees will *properly seal and mark*, as evidence, any confiscated intoxicating beverages.

4.10    Entering Bars, Taverns and Liquor Stores

Employees on duty or in uniform will not enter or visit any bar, lounge, parlor, club, store or any other establishment whose primary purpose is the sale and on-premise consumption of alcoholic beverages EXCEPT ON OFFICIAL BUSINESS. Employees on duty or in uniform will not purchase alcoholic beverages.

4.11    Playing Games on Duty

Employees on duty or in uniform will not engage in any game of cards, billiards, pool, chess, dominoes, electronic, or other games.

4.12    Political Activity

Employees will not participate (e.g., make political speeches, pass out campaign or other political literature, write letters, sign petitions, actively and openly solicit votes) in political campaigns while on duty or in uniform.

4.13    Seeking Personal Preferment

Employees will not solicit petitions, influence or seek the intervention of any person outside the facility for purposes of personal preferment, advantage, transfer,

RESTRICTED LAW ENFORCEMENT DATA
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0640

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

advancement, promotion or change of duty for themselves or any other person.

## Section Five - Identification and Recognition:

5.1    Giving Name and Other Pertinent Information

Employees will give their names and other pertinent information to any person requesting such facts unless doing so would jeopardize a successful completion of a facility or police assignment.

5.2    Carrying Proper Identification

Employees will have proper identification available at all times.

5.3    Personal Cards

Business cards showing connection to the facility must be approved by the Jail Admini                                                                     strator.

Exchange, Alteration or Transfer of Badge, Patch or Logo

The official badge, patch, or logo of the facility will not be altered, transferred, or exchanged except as authorized by the Jail Administrator.

## Section Six - Maintenance of Property:

6.1    Use of Polk County Property or Service

Employees will not use or provide any Polk County equipment or service other than for official Polk County  business unless specifically authorized by the Jail Administrator.

6.2    Responsibility for Polk County Property

Each employee is responsible for keeping all facility equipment clean, in good working order, and protect it from loss, damage, or destruction. Employees deemed responsible for the loss or damage of issued items may, in addition to any disciplinary action given, be required to compensate the facility for the loss or damage.

6.3    Reporting Needed Repairs

Employees will promptly report the need for repair of Polk County-owned property to their supervisor.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.
Page 11 of 13

PC0641

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

6.4    Responsibility for Private Property

Employees are responsible for protecting private property or equipment that has come into their possession by reason of their office against loss, damage, or destruction.

6.5    Care of Quarters

Employees will keep facility offices, vehicles, lockers, and desks neat, clean and orderly. Cleaning of inmate sleeping quarters and commonplaces will occur regularly under the supervision of facility employees.

6.6    Property and Evidence

Employees will tag and place all evidence in evidence room. Employees will not convert to their own use, manufacture, conceal, falsify, destroy, remove, tamper with, or withhold any property or evidence held in connection with an investigation or other official action except in accordance with established procedures.

6.7    Alteration or Modification of Police Equipment

Employees will not use any equipment that does not conform to policy or specifications. All equipment will be carried and utilized only as issued and authorized, and no changes, alterations, modifications or substitutions will be made to such equipment unless approved by the Jail Administrator.

6.8    Parking in Unauthorized or Reserved Parking Spaces

Parking in designated *handicap permit* spaces, *reserved or restricted* space, or *marked fire lanes*, unless responding to an actual emergency, is prohibited.

**SECTION SEVEN: Relationships with Courts and Attorneys**

7.1    Attendance in Court

Employees will arrive on time for all required court appearances and will be prepared to testify.

7.2    Recommending Attorneys or Bondsmen

Employees will not suggest, recommend, advise or counsel the retention of a specific attorney or bondsman to any inmate or member of the pubic while performing their official duties.

7.3    Testifying for a Defendant

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 12 of 13

PC0642

Texas Jail Policies and Procedures, 3.18 Rules of Conduct

Any employee subpoenaed or requested to testify for a criminal defendant or against Polk County or against the interest of the facility in any hearing or trial will immediately notify the Jail Administrator through the chain of command. Likewise, employees subpoenaed to judicial hearings will honor said subpoena and notify their immediate supervisor in a timely manner.

7.4    Interviews with Attorneys

Interviews between an employee and a complainant's [criminal] or Plaintiff's [civil] attorney about a case arising from the employee's employment by the facility will be done only in the presence of or with the knowledge and consent of the Jail Administrator.

7.5    Assisting in Civil Cases

Employees will not volunteer to testify in any civil action arising from facility duties.

7.6    Notice of Lawsuits Against Employees

Employees who have had a suit filed against them because of an act performed in the line of duty will immediately notify the Jail Administrator in writing and furnish a copy of the complaint as well as a full and accurate account of the circumstances in question.

7.7    Notice of Investigation, Arrest, or Citation

Employees who become the subject of citations or arrest actions will immediately notify the Jail Administrator in writing.  Any employee who has reason to know they are the subject of a criminal or civil action will immediately notify their supervisor, who will in turn notify the Jail Administrator.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0643

**Polk County Sheriff's Office**
**Texas Law Enforcement**
**Policies and Procedures**

| | |
|---|---|
| Subject: TASER | Policy Number: 05.06 |
| Issue Date: September 24, 2012 | Revision Date: December 10, 2012 |
| Approval Authority<br>Title and Signature: Kenneth Hammack, Sheriff | |

**POLICY:**

**USE OF ELECTRONIC INCAPACITATION DEVICES**

TASERS, Electronic Incapacitation Devices (EIDs), are considered soft intermediate less lethal weapons and are not likely to result in death or serious physical injury. These "Electro-Muscular Disruption (EMD)" weapons use an 18 to 26 watt electrical signal to temporarily override the body's central nervous system and directly control the skeletal muscles. This EMD effect causes an uncontrollable contraction of the muscle tissue, allowing the TASER to temporarily debilitate a subject regardless of pain tolerance or mental focus.

The M26 ADVANCED TASER or the TASER X26 systems are deployed as an additional law enforcement tool not intended to replace firearms or self-defense techniques. They may be used to control a dangerous or violent suspect when deadly force does not appear to be justified and/or necessary; or attempts to subdue the suspect by other conventional tactics have been, or will likely be, ineffective in the situation at hand; or there is a reasonable expectation that it will be unsafe for officers to approach within the contact range of the suspect.

    A.    **Use of Force Policy**

It is the policy of this agency that officers shall use only that amount of force that reasonably appears necessary, given the facts and circumstances perceived by the officer at the time of the event, to effectively control an incident. Given that no policy can realistically predict every possible situation an officer might encounter in the field, it is recognized that each officer must be entrusted with well-reasoned discretion in determining the appropriate use of force in each incident. While it is the ultimate objective of every law enforcement encounter to minimize injury to everyone involved, nothing in this policy requires an officer to actually sustain physical injury before applying reasonable force.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0644

Texas Law Enforcement Policies and Procedures, TASER

**B.    Authorized Personnel and Training**
Only commissioned personnel who have successfully completed a Agency approved course of instruction on the deployment of the M26 ADVANCED TASER or TASER X26 systems may be authorized by the Sheriff or his designee to carry or use them.

1. Biennial in-service training for all personnel authorized to carry and use less lethal weapons shall be documented and coordinated with the Training Coordinator.

2. Failure to complete required in-service training for less lethal weapons will result in revocation of the employee's authorization to carry the weapon(s) until proper training is completed.

**C.    Authorized Electronic Incapacitation Devices**
Only the M26 ADVANCED TASER or the TASER X26 as authorized for use by the Polk County Sheriff's Office personnel. The use of personally owned electronic incapacitation devices or cartridges is **prohibited**.

Officers authorized to use an Electronic Incapacitation Device may be issued a TASER as determined by the Sheriff or his designee. TASERS for certain off duty jobs may be authorized as determined by need.

**D.    TASER Deployment Procedures**

a. Use verbal commands and point the laser sight at subject before firing. Before using the TASER, the Officer shall, if practical, verbally warn the subject that the TASER will be deployed if the subject does not cease his/her combative behavior and comply with the officer's commands.

b. When the TASER is going to be deployed, the user should announce "TASER, TASER." This shall provide other Officers with a warning that the TASER is about to be deployed and give notification to the suspect of imminent discharge. When a tactical situation exists where it is not desirable to have the subject made aware of imminent deployment (i.e., person threatening suicide, or harm to themselves or someone else) then it is sufficient that Officer advise each other of imminent deployment via other forms of communication.

c. Request backup or arrest assistance (depending on the situation).

d. Use cover and distance to ensure officer safety.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 6

PC0645

Texas Law Enforcement Policies and Procedures, TASER

e. Aim at center of mass if possible. (The ideal target area for deployment is the back portion of the body.) Watch for thick and/or loose clothing. If probes hit clothing, the electrical current can penetrate for a maximum of 2 ¼ inches away from the skin. The TASER **should not** be aimed at and/or discharged at the eyes, face or genitals of a subject.

f. The TASER **should not** be deployed if the subject is coated with or standing in or near flammable liquids. (Some chemical and pepper sprays are alcohol based and are flammable.)

g. Avoid use at locations that may endanger the subject if the subject falls to the ground as a result of TASER deployment. Examples would include, but not limited to, slanted rooftops, ledges of tall buildings, tall fences, deep water or any materials which would cause serious injury if fallen on. The officer deploying the TASER is responsible for evaluating each situation on an individual basis.

h. If two or more officers are involved when a TASER is deployed, they shall make every effort to coordinate their actions to avoid miscommunication and/or jeopardizing their tactical situation.

i. If subject runs, the officer(s) must run also to prevent TASER wires from breaking.

j. Officers **shall not** use TASERS on subjects who are under physical restraint unless the subject is still violently resisting and lesser means of controlling the subject have failed.

k. Officers **shall not** use TASERS on subjects who are very young, on the elderly or on pregnant females unless the situation is such that there is no other safe method available to subdue them. Each officer will be expected to justify and articulate his/her reasons for deploying the TASER.

l. TASERS shall only be used as a "stun gun" in the event that additional air cartridges are needed and are unavailable, in self-defense or a confrontation with a suspect has become physical and normal air cartridge deployment is impractical.

**The TASER will only be deployed as an apprehension tool used in the process of a custodial arrest situation. All persons subjected to a TASER deployment will be taken into custody unless hospitalized as a circumstance of their condition. If hospitalized, they will still be considered to be "in custody" until released on bond, released**

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 3 of 6

PC0646

| Texas Law Enforcement Policies and Procedures, TASER |
| --- |

**pending formal charges or turned over to detention personnel.**

E.    **POST-DEPLOYMENT PROCEDURES**

Officer(s) using a TASER on a subject will ensure that the Sergeant or, in his absence, the Corporal is notified of the incident as soon as practicable after the deployment.    The Sergeant or Corporal will assess the situation and determine whether or not his/her presence is needed on the scene. The Sergeant or Corporal will notify the Chain of Command of all deployments of TASER.

**Persons who have been subjected to a TASER deployment shall be treated as follows:**

1.    Officers shall request emergency medical personnel to examine the subject.

2.    Medical personnel will be requested to remove the probes and treat the puncture sites.

3.    If the probes cannot be removed because of an unusual penetration or a hit to a vital area, the subject will be transported by EMS to an appropriate health care facility.  An examination for secondary injuries related to the fall should not be overlooked.

4.    If the suspect is transported to a medical facility, he/she will be accompanied by an officer as the subject is considered to be in custody and a proper disposition will be made as to their confinement or release.

5.    The probes may have blood on them and should be handled as a biohazard, wearing protective gloves when handled.  The wires shall be wound around the cartridge.  The used probes shall be placed in the spent cartridge container.  The probes, cartridge and a few of the Anti-Felon Identification Tags shall be wrapped in the protective gloves and placed into evidence.

6.    Photographs should be taken of the probe penetration sites and any secondary injuries in addition to the general appearance and condition of the subject.  The photos will be documented as evidence in the approved manner.

7.    When booking the subject into jail, Detention personnel will be advised of the fact that the suspect was subjected to a TASER deployment and verification from medical personnel will be

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 4 of 6

PC0647

Texas Law Enforcement Policies and Procedures, TASER

submitted.

7.      Officers shall complete a **"Use of Force"** form in addition to an **Offense Report**.

8.      The Offense Report shall include but not limited to the following elements;

   a.  Event(s) leading up to suspect being subjected to a TASER deployment

   b.  Where was suspect when subjected to deployment (grass, concrete, asphalt, fence est.)

   c.  The TASER serial number percentage of charge and how long charge was deployed for

   d.  Where the darts imbedded on suspect and if wires were broken or not

   e.  What time medical personnel was requested, what time they arrived, their name(s) and contact number(s)

F.      **Care and Use of Electronic Incapacitation Devices**

   a.  Each officer issued a TASER will ensure the batteries of the TASER systems are properly charged and the probe cartridge removed.

   b.  The probe cartridge will only be inserted immediately prior to its being placed in a holster.

   c.  Any defective or damaged TASER will not be carried and will be turned in for repair or replacement.

   d.  Expired air cartridges will not be carried.  Outdated cartridges will only be used for training purposes.

   e.  For uniformed personnel TASERS will only be carried in holsters accompanying their purchase and in the cross draw position.  This will prevent accidental discharge.  Detectives or plain-clothes personnel may carry TASER in an approved side holster.

   f.  Accidental discharges of any TASER system will be investigated by the on duty supervisor and supported by Offense Report and

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

Page 5 of 6

PC0648

| Texas Law Enforcement Policies and Procedures, TASER |

photographs. The appropriate medical assistance will be requested for any person struck by probes. Discharged air cartridges and probes shall be treated as evidence. Injuries of Sheriff's Office personnel will also be supported by "First Report of Injury" report. Results of the investigation shall be forwarded up the Chain of Command.

g. TASER will be inspected monthly by the appropriate supervisor with an inspection report completed. Any damage to the TASER will be immediately reported to the supervisor.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 6 of 6

PC0649

**POLK COUNTY JAIL**
**Policies and Procedures**

| Subject:   Use of Force & Deadly Force (Response to Resistance) | Policy Number: 8.01 |
|---|---|
| Issue Date: 11/19/2010 | Revision Date: |
| Approval Authority Title and Signature: Sheriff Kenneth Hammack | |

**POLICY:**

Human life is sacred. Protecting human life is the most important mission of POLK COUNTY SHERIFF'S OFFICE.   Bringing detainees and inmates into immediate compliance is less important than protecting innocent human life, including the protection of the officer's own life.

LAW ENFORCEMENT officers maintain a constant readiness and ability to act in instances where, in *their perception*, the *use of force* or *deadly force* is appropriate.  By maintaining readiness and capacity, officers reduce the likelihood of opposition and of the actual need for a forceful response of any kind.  While *officer discretion* is critical, the need for accountability and control of officer activities is necessary to limit abuses of authority. Jailers only use the amount of force reasonably necessary to bring inmates into compliance, protect life, and protect the integrity of the facility.

**PENOLOGICAL INTEREST:**

To provide reasonable and necessary force options when an inmate exhibits resistance, attempts an escape, is non-compliant to lawful instructions, or threatens or uses force.

**DEFINITIONS:**

*Authorized weapon:* A weapon approved by the department for sanctioned use by its officers.  No weapon is authorized for carry or use by an officer unless the agency expressly approves it and the officer has demonstrated proficiency with the weapon type in accordance with agency guidelines.

*Auxiliary weapons of availability:* An officer may come separated from their agency issued firearm or secondary impact weapons. Should this occur, the officer might have access to a *weapon of opportunity*, including but not limited to a flash light, citation holder, handcuffs, or any object that could be used as a weapon in the defense of them self or another.

*Baton or expandable baton:*  an impact weapon capable of inflicting bodily injury by

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0650

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

striking with a portion of the weapon.   Only batons authorized by the department can be carried or used.   Carrying or using *saps, billy clubs,* or *slapjacks* is prohibited.

***Chemical weapon:*** Weapons capable of temporarily incapacitating a person through the controlled release of some chemical irritant or agent.

***Certification with weapon:*** Officer has *demonstrated proficiency* with a particular weapon, or device.  The officer is authorized to carry and use this weapon in the performance of his official duties regardless of whether the officer is on-duty or off-duty.   Without such certification, the officer may not carry or use this or a similar weapon.

***Deadly force:*** An action, with or without the use of a weapon, intended to cause death or serious bodily injury; or, the use of any object in a manner intended to cause death or serious bodily injury.

***Electronic weapon:*** Weapons using short bursts of electrical energy to temporarily incapacitate a person without causing death or serious bodily injury.

***Firearm:***  Any device designated, made, or adapted to expel a projectile through a barrel by using energy generated by rapidly expanding gases, or any device readily convertible to that use, including all handguns, rifles, and shotguns.

***Force, non-deadly force, or less-lethal force:*** Actions not calculated under the circumstances to cause death or serious bodily injury.

***Knife:*** Any edged weapon that is deigned to inflict serious bodily injury or death that stabbing, cutting, slicing, whether legal or illegal, and including swords, daggers, axes, hatchets, etc.

***Lateral Vascular Neck Restraint [LVNR]:***  A method or manner of restraining or controlling a person by physically restraining the person's neck from behind.   This technique involves the initial restraint of a person through contact and control methods that may ultimately be used to incapacitate the person by rendering the person temporarily unconscious where the person refuses to submit to lesser levels of control.

***Less than lethal or intermediate weapons:*** Procedures or weapons that are designed to provide *force,* but usually *less than deadly force. Less than lethal* is sometimes referred to as *less-lethal, non-deadly force.*  Regardless of the name, officers know that any force, especially when applied under dangerous, tense, uncertain, and rapidly evolving situations, may cause harm, serious bodily harm or death, despite the best intentions of the officer.

***Physical strength and skill:*** Any physical actions by one or more officers (e.g., holding, restraining, pushing, and pulling) which may include special skills (e.g., boxing, karate, and judo) but do not include the use of *deadly force* or any authorized/other weapon.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 2 of 11

PC0651

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

**Probable cause:** Sufficient reason based upon known facts to believe a crime has been committed or that certain property is connected with a crime. Probable cause must exist for a law enforcement officer to make an arrest without a warrant, search without a warrant, or seize property in the belief the items were evidence of a crime. *Probable cause* is often subjective, but if the officer's belief or even hunch was correct, finding stolen goods, the hidden weapon or drugs may be claimed as self-fulfilling proof of probable cause.

**Serious bodily injury:** Harm that creates substantial risk of death, serious permanent disfigurement, or loss or impairment of any body function or organ.

## PROCEDURE:

Officers involved in responding to resistance are trained, tested, demonstrate proficiency, and re-qualify to carry authorized weapons such as firearms, batons, shields, restraints, restraint chairs, water hoses, chemical agents, electronic restraints and other protective equipment [*See: 3.4 Training and Proficiency Testing* and *3.5 Firearms Training & Proficiency Testing policies*]. Only under exigent circumstance may officers that are not *certified* with specific weapons or restraint systems be allowed to employ those systems or weapons. Equipment necessary to respond to resistance is stored and controlled in accordance with the armory operations instructions as detailed in 5.12 *Armory* policy.

In order to restrict abuse of inmates and unnecessary injuries to both staff and inmates, our procedures regulate response to resistance; describe conditions under which resistance, force, or deadly force may be used; and emphasizes a reasonable officer's assessment of the need for application of a particular level of response. Most often such a thought process require slit-second decision making under very trying and stressful conditions. It is therefore necessary for officers to known how to apply this policy in a timely manner.

**Prohibited Devices:**
In responding to resistance, only approved equipment is used. No *slappers, blackjacks,* or *lead-filled gloves* will be purchased, issued, or used in PCSO Jail. Except in extreme emergencies, firearms are not permitted inside the secured areas of PCSO Jail facilities. The Jail Administrator specifies the location and creates regulations regarding restrictions on taking firearms into the secure portion of the facility.

**Response to Resistance:**
Response to resistance is controlled by the basic elements of a *reasonable jail officer's perception* and a *reasonable jail officer's response*. To better understand and explain *response to resistance* and force issues, officer *perceptions* and officer *force options* the *Response to Resistance Ladder* or *force continuum* is attached to this policy and procedure. This chart illustrates five levels of *perception* and five corresponding levels of *response*. Officers must be familiar with, and know how to apply and explain this compendium [Refer to *Response to Resistance Ladder*, at the end of this policy].

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 3 of 11

PC0652

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

Jail officer's general perception and corresponding force options are:

**Level 1 – (Compliant).** The inmate is perceived by the officer to be *compliant.* The appropriate level of response is *cooperative controls,* including *officer presence, hand signals, verbal commands and instructions,* light touching or *patting,* etc. In other words cooperation at this level is a *two way street.*

**Level 2 – (Passively Resistant).** The inmate is perceived by the officer to be *passively resistant. The* most appropriate level of response is *contact controls,* including *strong or forceful soft hand, hand and arm holds pressured physical movement of the inmate, forced removal from his cell or area,* etc.

**Level 3 – (Actively Resistant).** The inmate is perceived by the officer to be *actively resistant. The* appropriate response is *compliance techniques.* <u>This is the threshold for any reasonable jail officer to consider this inmate to be a dangerous threat to himself, the officer and other inmates.</u> Compliance techniques may include *all reasonable* means to bring the *inmate into compliance as soon as reasonably possible.* These techniques may include *use of chemical weapons, use of restraints, forced movement, forcing a inmate's limbs behind his back, forcing a inmate down on the floor or against a wall, or using other forms of rough physical force,* etc. Once inmates are perceived as actively *resistant,* officers should not relax care until the subject is fully secured in an isolated cell.

**Level 4 – (Assaultive & a Threat to Bodily Harm).** The inmate is perceived by the officer to be assaultive – *and a threat to bodily harm.* The appropriate level of response is immediate *defensive tactics.* The original assaultive behavior may have been directed at a fellow inmate, another victim, or the officer. *Defensive tactics* may include *impact weapons, hard fist, or any other reasonable means available* and at hand to stop the aggression, defend against attack, and bring the inmate into compliance. It is contemplated and understood that reasonable officers, while employing defensive tactics, may cause injury, serious injury, and in some isolated instances, death without intending such consequences.

**Level 5 – (Assaultive & Threat to Serious Bodily Harm or Death).** The inmate is perceived by the officer to be *assaultive – serious bodily harm or death, or attempting violent based escape.* The appropriate level of response is *deadly force.* Deadly force includes firearms, knives, or any other means immediately available to the officer(s) that a reasonable officer in the same circumstance would consider as potentially causing death or serious bodily injury.

Only when there is a reasonable expectation that altered or damaged property may place others in imminent risk of death or serious bodily injury, or in threat of imminent escape may deadly force be use to protect property. For example,

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.
Page 4 of 11

PC0653

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

stopping an inmate from setting a fire, breaking glass out of a window to create a knife, or throwing a bomb.

It is important to remember that almost all incidents faced by jailers are not scripted, easy to understand, or predictable as to outcome.

**Application of Use of Force & Deadly Force:**
Officers use their best effort to determine the threat level and apply the corresponding response. Time permitting, officers must use care in evaluating an inmate's actions and perceived threat level.  If there is reasonable doubt and time permits, seek assistance before acting.  Justification for the use of force and deadly force must be limited to what is *known or reasonably perceived* by the officer at the time of the incident.  Facts unknown at the time force is used should not be considered later to determine whether the force was justified.

Before using any force against an inmate, time permitting, officers must:

1. Secure help in controlling the inmate;
2. State his intentions to use force or deadly force;
3. State the reason for the use of force or deadly force; &
4. Ask the inmate to submit to instructions and require signs of compliance, before using force or deadly force.

The amount and degree of force officers may use to achieve an objective takes into consideration the following possible issues, if time and circumstances allow:

1. Nature and seriousness of the original offense being committed by inmate;
2. Nature and seriousness of the risk of injury to the officers or others;
3. Age, physical condition, and behavior of the inmate;
4. Physical conditions (e.g., visibility) at the scene;
5. Feasibility and availability of alternative actions;
6. Opportunity and actual ability of the inmate to injure the officer, himself, or others; &
7. Disruptive nature of the inmate's non-compliance and the potential influence it might have on other inmates.

Before officers use *force* (but not *deadly force*) for the purpose of protecting an inmate from self-inflicted bodily injury [suicide attempt], or from uncontrollable circumstances, the officer is to consider other available alternatives to protect that inmate from harm.

Officers may use unauthorized objects as weapons, or use weapons in unauthorized manners if emergency circumstances make it necessary to protect human life and prevent serious injury.

Officers may draw and ready any authorized weapons for use only when they reasonably

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency.  Data subject to this restriction is contained throughout this publication.

Page 5 of 11

PC0654

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

anticipate that they may have to use such weapon(s).  This does not require officers to use the weapons.  Often, an additional show of force will cause a reasoning inmate to come into compliance with verbal commands.

Jailers have no obligation to *retreat* or *back down* before resorting to *use of force*, including *deadly force*. Officers may consider retreat or withdrawal where delay could make a more peaceable resolution, if such tactics would not increase risk to him, other officers, or cause loss of control over other inmates.  In some cases, an increased show of force may reduce the amount of force necessary to accomplish the officer's objective.   Jailers make decisions in such matter using the reasonable officer standard.  In other words . . . *what would another reasonable officer, under the same or similar circumstances do in this situation?*

**Batons:**
When it is appropriate to apply force, and direct contact alone is inadequate, additional force may be employed.  Batons may be used to separate fighting inmates, or to quell other types of violence. Officers should make reasonable *avoid* the following:

1. Avoid baton blows that are capable of inflicting serious bodily injury;
2. Avoid raising the baton above the head to strike someone or use the baton as a club or bludgeon;
3. Avoid delivering only short snappy body blows to vulnerable areas in order to temporarily incapacitate subjects; &
4. Avoid deliberately striking the *face, head, neck, collarbone, spine, kidney area, solar plexus, knees,* or *elbows.*

**Restraints:**
The use of restraint equipment is intended to prevent escape, assault, or the commission of some other offense by violent or disruptive inmates; to protect staff and inmates; and under circumstances approved by the Chief Deputy or his designee.  Restraints are never used as a means of punishment.  Restraints should restrict movement of an inmate only to the degree necessary to avoid injurious behavior.  Soft or padded restraints should be used when feasible.   Inmates must not be restrained in a position or manner that would exacerbate any physical infirmities.

When under the control of restraints, the inmate should receive medical care a minimum of every two [2] hours, to include changing position, exercising extremities, offering nourishment and liquids, offering toilet facilities, checking for medication needs.These checks are documented.

Restraints are removed from an inmate at the earliest possible time, usually when the inmate no longer exhibits behavior-necessitating restraint.  Only in exigent circumstances may an inmate be kept in restraints longer than twenty-four [24] hours. Once the restraints are removed from an inmate, it may become necessary to reinstall the restraints if the

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.
Page 6 of 11

PC0655

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

inmate violently acts out. In such cases, medical attention should be called.

Documentation of use of restraints includes, but is not limited to the following:

1. Events leading up to the need for restraints;
2. Time restraints were applied;
3. Justification for their restraint use;
4. Observations of the inmate's behavior and condition;
5. Checks, to every *fifteen [15] minute or checks every ten (10) minute* if restrained to a chair]; &
6. Time restraints are removed.

On the authorization of the shift supervisor, personnel may carry handcuffs. Inmates in lock down may be in restraints when moved out of their cells for any purpose. For inmates in general population areas, the use of restraints to control behavior is authorized only when other reasonable methods have failed. Use of restraints for inmates under escort outside the facility is also discussed in 5.5 *Escorted Trips* Policy.

**Restraints - Security Chair:**
An inmate may be restrained to a chair with the approval of the shift supervisor when that inmate's conduct is violent and dangerous to others when unrestrained, or the inmate poses a serious risk to the security and good order of the facility.

When the security chair is used, the chair is placed in plain view, restraints are checked every *ten [10] minutes* to include an assessment of the security of the restraints and the circulation to the extremities. The start time is written on the assessment and at the end of sixty [60] minutes, the inmate is taken from the chair, given water, and allowed to use the bathroom. If the behavior remains combative, the inmate will be placed back in the chair, and the narrative resumed. No person may be kept in the chair over *two [2] hours* without approval of the Jail Administrator or Chief Deputy .

**Chemical Agents:**
PCSO Jail may authorize the use of chemical agents to control an inmate or group of inmates who otherwise cannot be controlled [See: 8.2 *Use of Chemical Agents* Policy].

**Water Hoses:**
The use of water hoses may be authorized when lesser degrees of force have failed to bring an incident under control, or when prompt use is calculated to prevent or discontinue a serious offense involving violence or bodily harm. The decision to employ water is made by the Jail Administrator. If the Jail Administrator cannot be contacted in an urgent situation, the shift supervisor makes the decision.

**Electronic Restraints or Shields:**
Electronic restraints, tazers, or shields may be used prior to using deadly force. These

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

PC0656

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

devices may be used to subdue inmates in situations requiring protection of employees, citizens, or other inmates from imminent harm. This option is usually a safe and effective method of control, and is *less than lethal force.* After an electronic restraint is used on an inmate, or after an officer comes into contact with an electrified restraint, medical resources will then be contacted to check the inmate and officer for injuries.

***Less than lethal or Intermediate Weapons:*** Less lethal ammunition, such as rubber, wooden, or beanbags projectiles are additional options for controlling violent situations, and may be used upon approval of the Jail Administrator or designee. While this ammunition does not normally expose the inmates involved to as great a risk of death or serious injury; it will not be used at close range or directed at the head or other vital areas [See: 8.4 & 8.5*Special Munitions* Policies].

### Deadly Force:
Application of *deadly force* and *force* are authorized by detention officer only to achieve the following lawful objectives are to:

1. Defend himself, or others against serious threats of serious bodily injury or death;
2. Stop escape from custody;
3. Stop or break up riots; &
4. Prevent roaming at large by obviously mad or vicious animals; to relieve animals so badly injured that it cannot reasonably survive from injuries causing prolonged suffering.

Deadly force may be used to *prevent an escape from the facility, protect the public, or to protect other lives.* The use of deadly force is appropriate to protect property where there is likelihood lives may be jeopardized if property is altered or damaged. In an emergency where it is impossible or impractical to seek authorization, an employee may use appropriate force, and be required to later justify actions taken.

Deadly force will not be used under the following circumstances:

1. As a warning or threat;
2. With the intent to maim or cripple an inmate;
3. On an inmate who has not caused or threatened to cause serious bodily injury or death to another person;
4. At or from a moving vehicle;
5. Merely to prevent the destruction or theft of property; &
6. When the officer has some doubt as to the justification for using deadly force.

Firearms are only used in situations where there is danger of death or grievous bodily harm. However, firearms must not be discharged if less extreme measures will suffice, except in escape situations. An officer may fire under the following circumstances:

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 8 of 11

PC0657

> Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

1. At an inmate or other person whom the officer has seen kill or seriously injure another person, and who refuses to halt when ordered;
2. At an escaping inmate, if the escape is actually in progress, and cannot be reasonably prevented in a less violent manner;
3. At an inmate or other person carrying a weapon or attempting to obtain a weapon by force, if the officer has reason to believe the individual intends to cause death or serious injury; &
4. To protect property in cases such as arson, when the act is likely to cause serious injury, death, or seriously reduce the security effectiveness of the facility.

Verbal warnings are given prior to the use of firearms, if reasonably possible. Staff members who are fired upon by an inmate or non-inmate may return fire immediately. Officers using deadly force employ reasonable caution when in the proximity of civilians, or when a fired shot may carry into an inhabited area. Only staff that are weapons-qualified may draw or be authorized to use firearms in the course of their duties.

**Follow-up:**

In incidents where serious bodily injury or death occurs through the application of deadly force, officers secure the scene as well as possible, call for medical assistance, and notify their direct supervisor, in that order. The supervisor takes charge of the scene along with any investigation concerning the incident and report the incident immediately to the Jail Administrator and Sheriff. All officers assist in every way possible with the investigation of incidents involving the use of deadly force. Reports required by this policy receive executive review in an effort to:

1. Protect the integrity of the facts and the evidence;
2. Ensure that the officer's use of deadly force complied with state and federal laws, and department policy;
3. Determine if the officer's use of deadly force indicates a need for special counseling, training, or disciplinary action; &
4. Determine whether the situation requires further action.

Inmates subjected to response to resistance techniques are checked for injuries and provided indicated treatment after the scene has been secured. If injuries are suffered, immediate medical attention is provided to inmates and staff. If chemical agents have been used the inmate is given the opportunity to shower. An inmate must not be kept in restraints any longer than necessary to control the specific behavior involved.

**Reporting Requirements:**

Each officer who witnessed the incident or responded to the scene completes a written report. Witness reports are completed no later than the conclusion of the shift in which the incident occurred and filed with the Jail Administrator [See: 2.5 *Reporting of Incidents* Policy].

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.
Page 9 of 11

PC0658

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

Officer(s) who actually used or employed deadly force are to be relieved of duty. At the time the officers are relieved of duty the weapon(s) used in the incident is collected and tagged as possible evidence. The Jail Administrator or Shift Supervisor at the scene instructs the officer(s) who used deadly force to:

1. Refrain from making any statements to the news media, other officers, or supervisors;
2. Refrain from discussing the matter between officers or witnesses [if more than one officer]; &
3. Refrain from completing any reports or statements for at least twelve [12] hours.

Investigators debrief the officer and advise the Jail Administrator of their findings. Thereafter the officer(s) is transported home. Upon return to duty the next day, the officer(s) involved in the deadly force incident complete his report and make all required statements. The officer(s) provide all required information first hand *perception of events* at the time, and the *corresponding force options used*. Special attention is given to any deviation from this policy.

All reports completed by the officers using force, other officers or witnesses include the following:

1. A description of the events leading to the use of force or deadly force;
2. Original incident that precipitated the actions of the officer;
3. Accurate description of the incident and reasons for employing force;
4. Description of the weapon or device used and the manner in which it was used;
5. Description of any injuries suffered, and the treatment given or received;
6. List of all participants and witnesses to the incident; &
7. Copy of all incident reports compiled as a result of the incident.

The Jail Administrator formalizes criteria for reporting incidents. Reports of all injuries are filed in the central file and the employee's personnel record.

**Allegations Against Staff:**
The Jail Administrator investigates allegations of improper response to resistance, after notifying the Sheriff. In cases where possible criminal acts are involved, the appropriate law enforcement agency will be notified.

**RESTRICTED LAW ENFORCEMENT DATA**
This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.
Page 10 of 11

PC0659



RESTRICTED LAW ENFORCEMENT DATA

This data is proprietary and will not be duplicated, disclosed, or discussed, without the written permission of this agency. Data subject to this restriction is contained throughout this publication.

Page 11 of 11

Texas Jail Policies and Procedures, 8.01 Use of Force & Deadly Force (Response to Resistance)

PC0660