IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| WILLIAM JERRY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 9:23-CV-00032 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| POLK COUNTY, POLK COUNTY | § | |
| SHERRIFF'S OFFICE, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER GRANTING DEFENDANT POLK COUNTY'S AND DEFENDANT POLK COUNTY SHERRIFF'S OFFICE'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Polk County's ("County") and Defendant Polk County Sherriff's Office's ("PCSO") (collectively, "Defendants") Motion for Summary Judgment. [Dkt. 21]. Defendants filed their motion in this Court on October 31, 2024. *Id.* Plaintiff William Jerry ("Jerry") filed his Response on November 21, 2024. [Dkt. 27]. Defendants subsequently submitted their Reply on November 27, 2024. [Dkt. 29]. The pending motion is now ripe for review.

For the reasons stated below, the Court **GRANTS** Defendants' motion for summary judgment.

## I. BACKGROUND

This is an employment discrimination case. *See generally* [Dkt. 2]. This suit arises from Jerry's termination from the PCSO on March 2, 2021. Jerry sues for intentional race discrimination in employment under 42 U.S.C. § 1981[1] and 42 U.S.C. § 1983. *Id.* at ¶¶ 1, 2.

Jerry is a 48-year-old African-American man who served as a Jail Lieutenant in the Polk County Jail. [Dkt. 21-2 at 1]. Jerry had a lengthy career in law enforcement that started at the Kountze Police Department in September of 2000, where he worked as a Peace Officer. [Dkt. 21-5]. After working at the Galveston County Sheriff's Office, the Orange County Sheriff's Office, and the Newton

---

[1] Defendants point out that § 1981 does not provide a private cause of action against governmental entities. *See* [Dkt. 21 at 14 (citing Fifth Circuit and Supreme Court precedent)]. Jerry concedes this point and is no longer pursuing his § 1981 claim. *See* [Dkt. 27 at 3].

County Sheriff's Office, Jerry joined the PCSO on October 15, 2004 to work as a Peace Officer. *Id.* Jerry left his position in October of 2012 but eventually returned to PCSO in July of 2013. *Id.*

On June 10, 2019, Jerry was promoted to Jail Lieutenant. [Dkt. 21-11 at 1]. At the beginning of 2021, then Jail Captain Patrick Dickens submitted his resignation, effective March 12. [Dkt. 21-4]. On January 21, 2021, Sherriff Byron Lyons ("Sherriff Lyons")[2] wrote a letter to Adrena Gilbert, Director of Human Resources, informing her that he had offered Jerry the soon-to-be-vacant Captain position the day before (and he accepted). *Id.* Jerry's promotion was set to become effective on March 15, 2021. *Id.*

### a.    The Inmate Incident

On the morning of February 23, 2021, Jerry was working at the County Jail. [Dkt. 21-18 at 104]. Jerry testified that, at approximately 8:30 AM, an inmate in cell tank 231, Michael Richards ("Richards"), gave him the middle finger through the window of the cell tank. *Id.* at 105. Jerry testified that, after seeing the gesture, he instructed Richards with hand signals to pack up his belongings so he could be removed from his cell. *Id.* at 107. Jerry testified that Richards refused his instruction multiple times.[3] *Id.*

Four other officers were on duty and captured video footage of the encounter between Jerry and Richards ("Inmate Incident"): Officer Mickey Guidry ("Officer Guidry") [Dkt. 21-7], Officer Koriell Campbell ("Officer Campbell") [Dkt. 21-9], Officer Michael Goins ("Officer Goins") [Dkt. 21-10], and Officer Wyatt Cronin ("Officer Cronin") [Dkt. 21-8].

Prior to entering the cell, Jerry can be seen waiting outside of the cell door. [Dkt. 21-8 at 00:02-00:30]. Officer Guidry arrived and handed Jerry a taser, after which he immediately entered cell tank

---

[2] Sherriff Lyons started out as a jailer at the PCSO in 1986 and later returned to serve as Chief Deputy under the newly elected Sherriff Kenneth Hammack in 2005. [Dkt. 21-14 at 1]. He took office as County Sherriff on January 1, 2021. *Id.* Sherriff Lyons had known and worked with Jerry for over sixteen years and they shared a congenial relationship. *Id.* at 2. Like Jerry, Sherriff Lyons is an African-American man. *Id.* at 1.

[3] A good amount of video evidence has been submitted in this case. *See* [Dkts. 21-6, 21-7, 21-8, 21-9, 21-10]. Jerry's instructions and Richards's non-compliance were not captured on video.

231. *Id.* at 00:30-00:40. Upon entering the cell tank, Jerry grabbed Richards by the collar of his uniform and pulled him out of the cell into the "D-space" (a small room in between the cell tank and the hallway). *Id.* at 00:35-00:45; *see* [Dkt. 21-7 at 00:03-00:15]. Jerry made no verbal commands to Richards before grabbing him and pulling him into the D-space. *Id.* As he was pulling Richards into the "D-space," Jerry can be heard saying "you got me fucked up motherfucker!" [Dkt. 21-7 at 00:09]; *see* [Dkt. 21-19 at 2]. Jerry then slams Richards against the door and the wall in the D-space and yells "Look at you, you got me fucked up, motherfucker. You got me fucked up. Come on, hey." [Dkt. 21-7 at 00:12-00:20]; *see* [Dkt. 21-19 at 2]. Jerry had his forearm pressed firmly against Richards's neck and raised his taser to his head to intimidate him. [Dkt. 21-7 at 00:12-00:20]. Richards stated, "do you know who the fuck I am?"[4] and was struggling to speak due to the pressure of Jerry's arm on his neck. *Id.* at 00:17; [Dkt. 21-19 at 2]. Jerry yelled back, "I don't care who you are. Do you know who I am? You better get ready to find out, motherfucker." [Dkt. 21-7 at 00:18]; [Dkt. 21-19 at 2]. Jerry then shoved Richards out the doorway of the D-space into the hallway and commanded him to "walk." [Dkt. 21-7 at 00:30-00:37]; [Dkt. 21-19 at 2].

As Richard quietly proceeded down the hallway, Jerry approached his face and stated "You not the fuck who you think you are." [Dkt. 21-7 at 00:35-00:38]; [Dkt. 21-19 at 2]. Jerry then states "I'm going to put these hands on you mother-fucking ass, we're fixing to find out." [Dkt. 21-9 at 00:53-1:00]; [Dkt. 21-19 at 2]. Jerry remained close to Richards's face as he walked down the hall to intimidate him. [Dkt. 21-9 at 00:53-1:00]. Jerry can then be seen grabbing Richards by his hair and tossing him through a doorway that leads to the main booking area. *Id.* at 1:03-1:08. Once inside the booking area, Jerry asked "which one of these tanks you got open?"; after another jailer responded "286," Jerry, Richards, and the other jailers (Officers Cronin, Goins, Guidry and Campbell) moved towards cell 286. *Id.* at 1:08-1:15; [Dkt. 21-19 at 2]. Jerry then opened up the door to cell 286, asked

---

[4] This squarely contradicts Jerry's declaration ("Jerry Declaration"), wherein he states that Richards said "Do you know who the fuck I am? *I am a Captain with the Aryan Brotherhood.*" [Dkt. 27-2 at 3 (emphasis added)]. Based on the video evidence, Richards never announced his membership in the Aryan Brotherhood.

the other jailers to "give [him] some privacy," and then walked in the cell with Richards, at which point all the jailers behind Jerry shut off their body cameras. [Dkt. 21-9 at 1:15-1:28]. Cell 286 did not have a camera and Jerry was not wearing a body camera. [Dkt. 21-2 at 1]. However, Officers Cronin and Goins reported to Chief Deputy Rickie Childers ("Deputy Childers") and the Texas Ranger that they saw Jerry physically assault Richards inside of cell 286 through the cell window and heard screaming and loud thuds coming from the cell. *Id.* at 2; [Dkt. 21-16 at 2]; [Dkt. 21-17 at 2].

Surveillance footage from the booking area shows Jerry coming out of the cell over a minute later, with his lanyard off; he physically shoved Richards back into the cell as Richards attempted to exit with him. [Dkt. 21-6 at 01:20 & 01:23].[5] A little over a minute later, Jerry returns to the cell, makes Richards take off his orange jumpsuit, and places it outside the cell. *Id.* at 2:30-3:00 & 2:30-3:00. The PCSO does not have a policy of placing inmates in separation cells for offending or "disrespecting" jail staff. [Dkt. 21-14 at ¶ 8].

The same day of the Inmate Incident, Deputy Childers received a call from Justice of the Peace for Precinct 4, Jamie Richardson ("JP Richardson"). [Dkt. 21-15 at ¶ 3]. JP Richardson passed on what Officer Cronin and Goins had told her, i.e., that Jerry engaged in an unjustified use of force against Richards. *Id.* Officers Cronin and Goins did not report to Deputy Childers directly because, shortly after the incident, Jerry gathered everyone on staff who witnessed the incident and instructed them to turn in a report directly to him before they were allowed to leave for the day. [Dkt. 21-16 at ¶ 5; Dkt. 21-17 at ¶ 5]. Officers Cronin and Goins were also told by the officer working the control room (Lynn Allen) that Jerry had instructed her to prevent any jailers from going up to the sheriff's office after the incident. *Id.* This was "highly unusual." *Id.* Officers Cronin and Goins suspected that, through these measures, Jerry was trying to control the situation and protect himself. *Id.* Given this reality, Officers

---

[5] Dkt. 21-6 provides video footage of the booking center from two different angles. The Court will use the timestamps from both of these videos.

Cronin and Goins felt more comfortable reporting the incident to JP Richardson, someone whom they knew and trusted. [Dkt. 21-16 at ¶ 6; Dkt. 21-17 at ¶ 6].

### b.   Investigation & Jerry's Termination

The following day (February 24, 2021), Deputy Childers met with Sherriff Lyons and, after reviewing Richards's complaint and the evidence, decided to refer the matter to Texas Ranger Ryan Clendennen for a criminal investigation. [Dkt. 21-14 at ¶ 8; Dkt. 21-15 at ¶ 5]. Deputy Childers handled the internal investigation into whether Jerry's conduct violated the PCSO's policies. [Dkt. 21-15 at ¶ 5]. Jerry was informed that the incident was being investigated and that he was suspended pending its outcome. *Id.* Jerry was given a copy of the complaint against him and the videos of the Inmate Incident. [Dkt. 21-13; Dkt. 21-14 at ¶ 8; Dkt. 21-15 at ¶ 6]. Jerry was also instructed to provide a written statement regarding the Inmate Incident and to participate in an interview with Deputy Childers, but he refused. [Dkt. 21-12; Dkt. 21-15 at ¶ 6].

After reviewing the body cam footage of the Inmate Incident, Deputy Childers concluded that Jerry's conduct violated subsections 1.1 ("Obedience to Rules for Conduct"),[6] 1.11 ("Conduct Unbecoming"),[7] and 2.4 ("Conduct and Behavior")[8] of section 3.18 ("Rules of Conduct"), section 4.30 ("Body Worn Cameras"),[9] section 5.06 ("Tasers"),[10] and section 8.01 ("Use of Force & Deadly Force (Response to Resistance)") of the PCSO's Policies and Procedures ("Jail Policies").[11] [Dkt. 21-2 at 1;

---

[6] "All employees will be governed by the following general rules of conduct. Violation of any of these rules will be considered sufficient cause for disciplinary action up to and including dismissal." [Dkt. 21-3 at 8].

[7] "Conduct unbecoming" is "[c]onduct that adversely affects efficiency, erodes public respect, or reduces confidence in government service[.]" [Dkt. 21-3 at 10]. This encompasses "disgraceful conduct that adversely affects Polk County's legitimate interests." *Id.*

[8] Jerry brought "reproach, discredit, or embarrassment to [his] profession" by directing profanities at Richards and using excessive force. [Dkt. 21-3 at 11].

[9] Jerry had a duty to wear his body camera and record the encounter with Richards as the encounter became "confrontational, assaultive, or otherwise enforcement oriented." *See* [Dkt. 21-3 at 3].

[10] PCSO does not have a policy allowing tasers to be used for purposes of intimidation. *See* [Dkt. 21-3 at 21–26].

[11] An officer's responses to resistance are supposed to conform to the "Response to Resistance Ladder." *See* [Dkt. 21-3 at 29, 37 (depicting the ladder)].

Dkt. 21-15 at ¶ 5]. Jerry received a termination letter from Deputy Childers on March 2, 2021 which summarized these findings. [Dkt. 21-2]. On the same day, Jerry signed the termination letter on the line indicating that he did not agree with the substance of the letter and wished to appeal the termination through the chain of command. [Dkt. 21-2 at 2]. Jerry refused to provide a statement in support of his objections to the findings in the termination letter. *Id.* Sheriff Lyons reviewed the evidence and the findings in the termination letter and made the decision to uphold the termination on March 4, 2021. *Id.*

### c.   Attachments & Relevant Procedural History

Defendants attach the following to their motion for summary judgment: (1) the declaration of Sherriff Lyons as custodian of business records ("Custodian Declaration") [Dkt. 21-1], (2) the letter of termination from Deputy Childers ("Letter of Termination") [Dkt. 21-2], (3) the Jail Policies [Dkt. 21-3], (4) Jerry's promotion letter to the position of Captain ("Promotion Letter") [Dkt. 21-4], (5) Jerry's service history ("Service History") [Dkt. 21-5], (6) the video footage from the booking area of the Polk County Jail ("Booking Area Footage") [Dkt. 21-6], (7) the video footage from Officer Guidry's body cam ("Guidry Footage") [Dkt. 21-7], (8) the video footage from Officer Cronin's body cam ("Cronin Footage") [Dkt. 21-8], (9) the video footage from Officer Campbell's body cam ("Campbell Footage") [Dkt. 21-9], (10) the video footage from Officer Goins's body cam ("Goins Footage") [Dkt. 21-10], (11) Jerry's personnel action form ("Personnel Action Form") [Dkt. 21-11], (12) Jerry's *Garrity* warning regarding participation in the investigation ("*Garrity* Warning") [Dkt. 21-12], (13) Jerry's confirmation of receipt of the complaint against him and the video evidence ("Confirmation of Receipt") [Dkt. 21-13], (14) Sherriff Lyon's declaration ("Lyons Declaration") [Dkt. 21-14], (15) Deputy Childers's declaration ("Childers Declaration") [Dkt. 21-15], (16) Officer Cronin's declaration ("Cronin Declaration") [Dkt. 21-16], (17) Officer Goins's declaration ("Goins Declaration") [Dkt. 21-17], (18) Jerry's deposition ("Jerry Deposition") [Dkt. 21-18], and (19) a transcript of the Guidry Footage ("Guidry Transcript") [Dkt. 21-19].

Jerry attaches the following to his Response: (1) the professional biography of Commander Francis Matthew Ross ("Commander Ross Biography") [Dkt. 27-1], (2) the Jerry Declaration [Dkt. 27-2], (3) Officer Guidry's declaration ("Guidry Declaration") [Dkt. 27-3], and (4) the declaration of Commander Ross ("Commander Ross Declaration") [Dkt. 27-4].[12]

Based on previous Orders in this case, the Court will not consider certain parts of Jerry's attachments. On September 23, 2024, Jerry filed his designation of experts. [Dkt. 19]. On November 11, 2024, Defendants moved to strike the expert testimony of the two experts mentioned in Jerry's notice: Commander Ross and Mitch Newman. [Dkt. 24]. This motion was referred to Magistrate Judge Christine L. Stetson for disposition. [Dkt. 26]. On December 18, 2024, Judge Stetson granted Defendants' motion to strike and ruled that the designation of Commander Ross and Mitch Newman as non-retained experts was improper under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure ("Expert Designation Order").[13] [Dkt. 34 at 11].

On November 27, 2024, Defendants moved to strike the Commander Ross Declaration, the Guidry Declaration, and the Jerry Declaration. [Dkt. 30]. This motion was also referred to Judge Stetson for disposition. [Dkt. 31]. On December 18, 2024, Judge Stetson granted Defendants' motion to strike ("Summary Judgment Evidence Order"). [Dkt. 35]. In doing so, she struck the following portions of Jerry's summary judgment evidence: (1) paragraphs three,[14] four,[15] and five[16] from the

---

[12] Jerry's Response also incorporates the Jerry Deposition attached to Defendants' motion. [Dkt. 27 at 1].

[13] Jerry's expert designation deadline in this matter expired on September 23, 2024. [Dkt. 18 at 1]. The end of the Expert Designation Order noted that "[i]f Plaintiff seeks leave to properly designate his experts after the deadline, then he should seek that relief from the district court." [Dkt. 34 at 11]. Jerry never requested such relief from this Court.

[14] "It is my professional opinion that noncompliance in correctional or law enforcement situations can escalate the severity of incidents." [Dkt. 27-4 at ¶ 3].

[15] "Based on my training and experience, I recommend employing techniques that involve the application of open-handed methods to non-vital areas of the body when subduing a suspect or inmate." [Dkt. 27-4 at ¶ 4].

[16] "In my opinion, [Plaintiff] acted in accordance with proper protocols." [Dkt. 27-4 at ¶ 5].

Commander Ross Declaration, (2) paragraph eleven,[17] and part of paragraph twelve[18] from the Guidry Declaration, and (3) paragraphs seven, eight, nine, and ten from the Jerry Declaration.[19] *Id.* at 11–12. Accordingly, the Court will not consider these parts of Jerry's attachments in deciding the pending motion.

## II.   LEGAL STANDARDS

### a.   Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005); FED. R. CIV. P. 56(c). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV*, 420 F.3d at 536. "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be drawn in favor of the nonmoving party. *Smith v. Amedisys Inc.*, 298 F.3d 434, 440 (5th Cir. 2002). There is no genuine issue of material fact if, when the evidence is viewed in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (citations omitted). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Tennyson v. Hatton*, No. 6:16cv1206, 2021 WL 472963, at *7 (E.D. Tex. Jan. 4, 2021) (citing *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 589 (5th Cir. 2004)), *report and recommendation*

---

[17] "I feel Officer William Jerry got railroaded and done wrong. In my time working at the Polk Sheriff's Department, I had seen multiple white officers use force, more force than what William Jerry used against Michael Richards, and they were not terminated or even seen as using excessive force." [Dkt. 27-3 at ¶ 11].

[18] "In my opinion, based on the circumstances I saw and based on my involvement with the incident, I believe Chief Deputy Childers was behind the firing of Officer William Jerry." [Dkt. 27-3 at ¶ 12].

[19] Collectively, these paragraphs addressed episodes of excessive force used by Jerry's "white co-workers": Cade Burman, Deputy Lee Rogers, Deputy Garrett Childers, and Captain Andy Lowrie. *See* [Dkt. 27-2 at ¶¶ 7–10].

*adopted*, No. 6:16-cv-01206, 2021 WL 473741 (E.D. Tex. Feb. 9, 2021); *see* FED. R. CIV. P. 56(c)(1)(A).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). When video evidence is available, courts must view the facts in light of the video evidence. *Salazar v. Molina*, 37 F.4th 278, 280 (5th Cir. 2022) (citing *Scott*, 550 U.S. at 381; then citing *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022); then citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).

## III.   DISCUSSION

Discrimination based on race violates the Equal Protection Clause of the 14th Amendment. *See, e.g.*, *Crawford-El v. Britton*, 523 U.S. 574, 585 (1998). Section 1983 and Title VII are "parallel causes of action," and the inquiry into intentional discrimination is essentially the same for actions brought under both statutes. *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007). Thus, the burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green* for Title VII employment discrimination claims is also applicable for claims brought under Section 1983. *See, e.g.* *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination, by showing that: (1) he is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the defendant employer; and (4) he was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam). Once a prima facie case is established, the burden shifts to the defendant to give a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 557 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.

9

2000)). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* (citation omitted). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." *Id.* (citation omitted). "To carry this burden, the plaintiff must rebut each nondiscriminatory . . . reason articulated by the employer." *Id.* (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). The plaintiff must present "substantial evidence" of pretext. *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

### a.  Discrimination Claim against PCSO

Defendants argue that the PCSO lacks a separate jural existence from the County and cannot be a party to the suit. [Dkt. 21 at 24–25]. The Court agrees.

The capacity of a sheriff's office to sue or be sued "'should be determined by the law under which it was organized.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting FED. R. CIV. P. 17(b)); *see also Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (Heartfield, J.). "In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation [i.e., the County] 'to grant the servient agency with jural authority.'" *See Jacobs*, 915 F. Supp. at 844 (citations omitted). In this case, Jerry has not alleged or proven that the County has taken an "express action" granting the PCSO with jural authority. Accordingly, the PCSO is an improper party. *See* [Dkt. 27 at 3 (conceding that the PCSO is an improper party)]. The Court will now analyze whether Jerry has carried his summary judgment burden for his § 1983 claim against the County.

### b.  Discrimination Claim against the County

#### i.  Prima Facie Case

Jerry has failed to carry his burden on his prima facie case for racial discrimination. The Jerry Declaration indicates that Jerry is a Black male; as such, he is a member of a protected group. [Dkt.

10

27-2 at 2]. There is competent evidence of Jerry's qualification for his position as Jail Lieutenant. Jerry has law enforcement experience stretching back to 2000, he has served 22 years as a Peace Officer, and he has obtained his Master Peace Officer License. *Id.*; *see also* [Dkt. 21-5]. It is also undisputed that Jerry suffered an adverse employment action when he received the Letter of Termination on March 2, 2021 and his termination was upheld by Sherriff Lyons two days later. [Dkt. 21-2 1–2]. However, the fourth requirement for a prima facie case is the stumbling block.

Jerry never even alleged that he was replaced by an individual outside his protected class. *See generally* [Dkt. 2]; *see McCoy*, 492 F.3d at 556. There is also a dearth of evidence about Jerry being treated less favorably than other similarly situated employees outside his protected group. *See McCoy*, 492 F.3d at 556. The Jerry Declaration dedicates four paragraphs to discussing excessive force incidents involving three white deputies and a captain, but these paragraphs were stricken by the Summary Judgment Evidence Order. [Dkt. 35 at 12]. Similarly, the paragraph in the Guidry Declaration referencing other white officers using force was stricken. *Id.* And these were fatal blows—comparators are not mentioned anywhere else in the record. For this reason, the Court finds that Jerry has failed to raise a fact issue on his prima facie case against the County.

Even if Jerry could establish a prima facie case, the other levels of the *McDonnell Douglas* framework do not bode well for him. Defendants have carried their burden of production on providing a legitimate, non-discriminatory reason for the adverse employment action. *See McCoy*, 492 F.3d at 557. They provide competent evidence that Jerry was terminated for (1) refusing to provide a written statement and participate in the internal investigation, (2) violating the PCSO's excessive force policy, (3) violating the PCSO's body camera policy, (4) violating the PCSO's taser policy, and (5) the language directed towards Richards. Jerry has the burden of rebutting *each* of these non-discriminatory justifications with "substantial evidence" of pretext. *See Jones*, 8 F.4th at 369. After excising stricken evidence, Jerry leaves four of these justifications (the excessive force, body camera, taser, and profanity justifications) completely unaddressed. While Jerry provides some evidence that he tried to

participate in the internal investigation, *see* [Dkt. 27-2 at 5 ("I spoke to Sherriff Lyons about my case and he dismissed me without considering what I had to say")], this is anything but "substantial" and is overwhelmed by other evidence before the Court. *See Jones*, 8 F.4th at 369; *see* [Dkt. 21-12; Dkt. 21-14 at 3; Dkt. 21-15 at 2–3, 4]. And finally, Jerry never addressed the "same actor" inference—this further complicates his ability to prove pretext. *See Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421–22 (5th Cir. 2009) ("The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue."). This inference is ultimately rebuttable, but Jerry has not contested it with adequate evidence. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 229 n.16 (5th Cir. 2000) (citation omitted) (internal quotation marks omitted) (noting that the "same actor" inference "does not rule out the possibility that an individual could prove a case of discrimination."); *see also Green v. Tri-Con, Inc.*, No. 121CV00481MJTZJH, 2023 WL 9185691, at *7 (E.D. Tex. Oct. 17, 2023), *report and recommendation adopted*, No. 1:21-CV-00481-MJT-ZJH, 2024 WL 95350 (E.D. Tex. Jan. 9, 2024).[20]

For these reasons, the Court finds that Jerry has failed to carry his burden on the *McDonnell Douglas* framework.

### ii. *Monell* Liability

Even if Jerry somehow raised a fact issue on the *McDonnell Douglas* framework, he fails to establish municipal liability.

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy [or custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Winder v. Gallardo*, 118 F.4th 638, 647 (5th Cir. 2024) (per curiam) (internal quotation

---

[20] The Response does contain argument from counsel on this point: "Black Americans have faced racism from other black people in this country for literally hundreds of years, much of it documented in history books. Plaintiff is simply saying that in regards to that issue addressed by Defendant, reasonable minds would most definitely differ." [Dkt. 27 at 8]. But alas, this is not summary judgment evidence. *See Dasgupta v. Beckett Collectibles, LLC*, No. 4:23-CV-838, 2024 WL 4860794, at *1 (E.D. Tex. Nov. 21, 2024) (Mazzant, J.) ("[A]rguments and assertions in briefs or legal memoranda will not suffice to carry [the non-movant's summary judgment] burden.").

12

marks omitted) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978))). A successful *Monell* claim requires an underlying constitutional violation. *Id.* (citing *Landry v. Laborde-Lahoz*, 852 Fed. App'x 123, 127 (5th Cir. 2021). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citation omitted).

Sherriff Lyons is the relevant policymaker for our purposes.[21] [Dkt. 21-14 at 5]. He stated in his declaration he has never been accused of racial discrimination (or discrimination of any sort), that the County "does not have a policy, custom or practice of discriminating against individuals or employees based on race," and that the County's policy "is the opposite; everyone is to be treated fairly and equally regardless of race." *Id.* This is buttressed by the Childers Declaration, the Cronin Declaration, and the Goins Declaration. [Dkt. 21-15 at 5; Dkt. 21-16 at 3; Dkt. 21-17 at 3]. Moreover, Sherriff Lyons is an African-American man, he had a cordial work relationship with Jerry, and he planned on promoting Jerry to Jail Captain—the highest position in the jail—before the facts of this case came to light. [Dkt. 21-14 at 1–2].

The *Monell* arguments raised in Jerry's Response are tethered to stricken materials: "Plaintiff maintains that Officer Jerry was discriminated against by a custom or practice of Polk County, *to protect white officers from termination or severe punishment when they use excessive force against others*." [Dkt. 27 at 7 (emphasis added)]. Granted, there is an argument that can be teased out of Jerry's Response and is not attached to stricken material. Jerry emphasizes that Deputy Childers refused to consider Officer Guidry's statement, which favored Jerry, but he considered the biased statements of Officer Cronin and Officer Goins, who had an adversarial relationship with Jerry. *Id.*; *see also* [Dkt. 27-2 at 3 (mentioning that Jerry had denied Officer Cronin and Officer Goins promotions and had

---

[21] Based on the analysis in the section addressing PCSO, the Court considers Sherriff Lyons as the relevant policymaker for *the County*.

13

disciplined them on several occasions); Dkt. 27-3 at 4]. There are two issues with this. First, the video footage shows that Officer Cronin's and Officer Goins's reports were not slanted against Jerry based on a sour relationship—they almost perfectly track with the video evidence.[22] *See Salazar*, 37 F.4th at 280. And second, even if the statements of Officer Cronin and Officer Goins were biased, there is simply no evidence of a County custom or policy of considering biased reports against Black jailers during investigations while walling off favorable ones. *See Spiller*, 130 F.3d at 167.

For these reasons, Jerry fails to carry his burden on *Monell* liability, even if he could miraculously survive the *McDonnell Douglas* gauntlet. Defendants are entitled to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Polk County's and Defendant Polk County Sherriff's Office's Motion for Summary Judgment [Dkt. 21] is hereby **GRANTED**.

It is further **ORDERED** that all Court dates and deadlines are hereby **VACATED**.

This constates a **FINAL JUDGMENT** and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 3rd day of March, 2025.**

_____
Michael J. Truncale
United States District Judge

---

[22] Officers Cronin and Goins state that, after Jerry and Richards entered cell 286, they saw Jerry getting physical with Richards and could hear screams and thuds coming from inside the cell. [Dkt. 21-16 at 2; Dkt. 21-17 at 2]. There is no video footage depicting what transpired between Jerry and Richards once they entered cell 286. However, there *is* footage of Jerry exiting the cell without his lanyard and shoving Richards back into it. There is also footage of Jerry's aggressive behavior and threats before he entered the cell. Combined with other evidence in the record (e.g., Jerry's protective acts after the incident and his refusal to provide a statement), no reasonable juror would find Officers Cronin and Goins's version of the events uncredible. *See Scott*, 550 U.S. at 380.

14